UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

ANDREW KRIVAK, JR.,

                                    Plaintiff,                    **Index No. 23-cv-06960-KMK**

v.

PUTNAM COUNTY; Putnam County Sheriff's Department Sheriff
ROBERT THOUBBORON, in his individual capacity; Putnam
County Sheriff's Department Officers HAROLD TURNER,
DANIEL STEPHENS, PATRICK CASTALDO, WILLIAM
QUICK, JOHN DANIEL REES, WILLIAM ASHER in their
individual capacities; Putnam County District Attorneys ROBERT
V. TENDY and KEVIN WRIGHT, in their individual capacities;
Putnam County Assistant District Attorneys LARRY GLASSER;
CHANA KRAUSS; and CHRISTOPHER YORK, in their
individual capacities; District Attorney Investigator RALPH
CILENTO in his individual capacity; and DENISE ROSE,
                                    Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN
SUPPORT OF HIS MOTION TO DISQUALIFY DEFENSE
COUNSEL**

Karen A. Newirth                Oscar Michelen                Jeffrey Deskovic
Newirth Law PLLC                Cuomo LLC                     Law Offices of J. Deskovic PLLC
43 West 43rd Street, Suite 160  200 Old Country Road          3148 East Tremont Avenue
New York, New York 10036        Mineola, NY 11501             Bronx, NY 10465
(917) 426-5551                  (516) 741-3222                (914) 703-1327
karen@newirth-law.com           omichelen@cuomo.com           lawyer@jeffreydeskovic.com

*ATTORNEYS FOR PLAINTIFF ANDREW KRIVAK*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT    **1**

PROCEDURAL HISTORY    **1**

FACTS    **3**

LEGAL STANDARD    **5**

ARGUMENT    **8**

    I.    Portale Randazzo LLP and Silverman & Associates Must Be Disqualified From Representing Any Party In This Litigation    10

        A.    Portale Randazzo's Concurrent Representation of the County, the PCSD Defendants and the PCDA Defendants Requires Disqualification    10

        B.    Portale Randazzo's Successive Representation of the County, the PCSD Defendants and the PCDA Defendants, and Silverman & Associates's Successive Representation of Defendant Castaldo Also Require Disqualification    15

    II.    Portale Randazzo and MDAF Must be Disqualified Due to the Differing Interests Between their Concurrently Represented Individual Defendant Clients    19

        A.    Supervisory vs. Non-Supervisory Defendants    20

        B.    Differing Knowledge, Participation, and Culpability for Alleged Misconduct    22

        C.    Differing History of Misconduct    25

    III.    The Conflicted Firms Should Be Disqualified Now to Ensure the Integrity of the Proceedings, Prevent Delay, and Promote Efficiency    26

CONCLUSION    **27**

# TABLE OF AUTHORITIES

## CASES

*Akagi v. Turin Hous. Dev. Fund Co.*, 2017 U.S. Dist. LEXIS 41321 (S.D.N.Y. Mar. 22, 2017)...6

*Bd. of Educ. v. Nyquist*, 590 F.2d 1241 (2d Cir. 1979) ....................................................5, 6, 10, 19

*Benevida Foods, LLC v. Advance Mag. Publishers Inc.*, No. 15-CV-02729; 2016 U.S. Dist. LEXIS 81186; 2016 WL 3453342 (DF)...............................................................................18

*Blake v. Race*, 2005 U.S. Dist. LEXIS 64588 (E.D.N.Y. Jan. 11, 2005)(SJ)...........................8, 19

*Brown & Williamson Tobacco Corp. v. Pataki*, 152 F. Supp. 2d 276 (S.D.N.Y. 2001)................7

*Ceramco, Inc. v. Lee Pharmaceuticals*, 510 F.2d 268 (2d Cir. 1975)..........................................17

*Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976)..............................6, 7, 10

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995)............................................................................20

*Dunton v. City of New York*, 729 F.2d 903 (2d Cir. 1984).................................................8, 16, 16

*Emile Indus., Inc. v. Patenetex, Inc.*, 478 F.2d 562 (2d Cir. 1973) .............................................5

*Evans v. Artek Sys. Corp.*, 715 F.2d 788 (2d Cir. 1983) .....................................................15, 17

*Felix v. Balkin*, 49 F. Supp. 2d 260 (S.D.N.Y. 1999)...................................................................26

*Fierro v. Gallucci*, No. 06-CV-5189; 2007 U.S. Dist. LEXIS 89296 (E.D.N.Y. Dec. 4, 2007)...18

*In re Fischer*, 202 B.R. 341 (E.D.N.Y. 1996) ...............................................................................9

*Freedman v. Rakosi*, 674 F. Supp. 3d 105 (S.D.N.Y. 2023) ........................................................18

*Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225 (2d Cir. 1977) ...............................3

*Galloway v. Nassau Cnty.*, 569 F. Supp. 3d 143 (E.D.N.Y. 2021) ..........................................5, 21

*Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746 (2d Cir. 1981)......................................................7

*Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737 (2d Cir. 1978) ................................................17

*GSI Commerce Sols., Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204 (2d Cir. 2010).......................6, 10

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127 (2d Cir. 2005) .........5, 6, 7, 17

*Hull*, 413 F.2d 569 .........................................................................................................5, 17, 19

*In re I Successor Corp.*, 321 B.R. 640 (Bankr. S.D.N.Y. 2005) .....................................................6

*J.P. Morgan Chase Bank v. Liberty Mutual Ins. Co.*, 189 F. Supp. 2d 20 (S.D.N.Y. 2002) ........14

*Lamborn v. Dittmer*, 873 F.2d 522 (2d Cir. 1989) ........................................................................5

*Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201 (S.D.N.Y. 2009) ............................8, 8

*Muniz v. Re Spec Corp.*, 230 F. Supp. 3d 147 (S.D.N.Y. 2017) ....................................................9

*NCK Organization, Ltd. v. Bregman*, 542 F.2d 128 (2d Cir. 1976) .............................5, 16, 18, 19

*Owen v. City of Independence*, 445 U.S. 622 (1980) ..................................................................16

*Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381 (S.D.N.Y. 2010).......26

*Soc'y for Good Will to Retarded Children, Inc. v. Carey*, 466 F. Supp. 722 (E.D.N.Y. 1979) ......5

*T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F. Supp. 265 (S.D.N.Y. 1953)...........5, 19

*Tiffany v. Vill. of Briarcliff Manor*, 2000 U.S. App. LEXIS 15812 (2d Cir. June 29, 2000).........8

*U.S. Football League v. Nat'l Football League*, 605 F. Supp. 1448 (S.D.N.Y. 1985).................26

*United States v. Huawei Techs. Co.*, 2020 U.S. Dist. LEXIS 32144 (E.D.N.Y. Feb. 25, 2020)...20

*United States v. Prevezon Holdings Ltd.*, 839 F.3d 227 (2d Cir. 2016) .................................15, 17

*United States v. Schwarz*, 283 F.3d 76 (2d Cir. 2002) ..........................................................*passim*

*Wheat v. United States*, 486 U.S. 153 (1988) .......................................................................6, 20

*Zalewski v. Shelroc Homes, LLC*, 856 F. Supp. 2d 426 (N.D.N.Y. 2012) ....................................18

**STATUTES**

Title 42 U.S.C.
    § 1983 ...........................................................................................................................16

**OTHER AUTHORITIES**

https://www.lohud.com/story/news/2020/08/14/anthony-dipippo-found-not-guilty-rape-and-
    murder-settles-12-million-putnam-county-da-angry/3374313001/ .......................................2

New York Rules of Professional Conduct, 22 N.Y.C.R.R. 1200 (2020) .......................................1
    Rule 1.5..........................................................................................................................................1
    Rule 1.6...................................................................................................................................7, 16
    Rule 1.7.................................................................................................................................19, 23
    Rule 1.9.................................................................................................................................19, 23

## PRELIMINARY STATEMENT

Plaintiff Andrew Krivak moves for the disqualification of the law firms Silverman & Associates, counsel to defendant Putnam County (the "County"); Portale Randazzo LLP, counsel to defendants Putnam County Sheriff's Department Officers Harold Turner, Daniel Stephens, Patrick Castaldo, William Quick, John Daniel Rees, and William Asher (the "PCSD Defendants"); and Morris Duffy Alonso & Faley, counsel to defendants Putnam County District Attorneys Robert V. Tendy and Kevin Wright, Putnam County Assistant District Attorneys Larry Glasser, Chana Krauss, and Christopher York; and Putnam County District Attorney Investigator Ralph Cilento (the "PCDA Defendants"). To ensure the integrity of the proceedings, disqualification is required as a result of the firms' multiple conflicts of interest created by their successive and concurrent representations, in violation of Rules 1.7 and 1.9 of the New York Rules of Professional Conduct.[1]

## PROCEDURAL HISTORY

On August 9, 2023, Plaintiff Andrew Krivak filed this Section 1983 action against Putnam County, the PCSD Defendants, PCDA Defendants[2], and Denise Rose, alleging the violation of his civil rights in connection with his wrongful arrest, indictment, conviction, and imprisonment for a 1996 rape and murder he did not commit and which resulted in his wrongful detention for almost twenty-seven years.[3] Exh. 1. The PCSD Defendants and PCDA Defendants are sued in their individual capacities. *Id.* In September and October 2023, James A. Randazzo

---

[1] The New York Rules of Professional Conduct, 22 N.Y.C.R.R. 1200 (2020) (hereinafter, "RPC") apply to the conduct of attorneys appearing before the United States District Court for the Eastern District of New York. *See* Rule 1.5(b)(5) of the Local Rules of the Southern and Eastern District Courts of New York.

[2] The PCSD and PCDA Defendants are collectively referred to as the "Individual Defendants".

[3] Mr. Krivak also filed a claim for his unjust conviction and incarceration in New York State's Court of Claims on April 3, 2023; this matter was settled on September 25, 2023.

and Drew Sumner of Portale Randazzo LLP filed notices of appearance on behalf of Putnam County and the Individual Defendants. ECF Nos. 47, 56, and 57. The County and the Individual Defendants filed separate answers to the Complaint. ECF Nos. 55, 60, 61.

Portale Randazzo previously represented Putnam County and many of the PCSD Defendants in *DiPippo v. Putnam County et al.,* 17-cv-7948 (S.D.N.Y.) (NSR). *See* ECF No. 87 at 1-2. Anthony DiPippo, plaintiff in *DiPippo v. Putnam County*, was Mr. Krivak's co-defendant in the underlying criminal case, was exonerated in 2016, and brought a Section 1983 claim against Putnam County and many of the PCSD Defendants arising from many of the same facts and circumstances giving rise to the instant case. *See* Exh. 2. *DiPippo* was settled in 2020. *See* Exh. 3[4].

By letter on March 15, 2024, Plaintiff sought leave to file the instant motion, identifying several actual or potential conflicts in Portale Randazzo LLP's concurrent representation of all defendants. ECF No. 84 (hereinafter, the "March 15 Letter").[5] Plaintiff was initially compelled to raise these issues after learning that the County's insurance would not indemnify the PCSD Defendants for punitive damages. *Id.* at 2. On March 29, 2024, Portale Randazzo advised that Putnam County and its insurance carrier had determined that separate counsel was required for Putnam County and, further, that new counsel would evaluate any conflict between Putnam County and the PCDA Defendants. ECF No. 87 at 1. On April 10, 2024, Silverman & Associates appeared on behalf of Putnam County, and on April 26, 2024, Silverman & Associates advised that it determined that a potential conflict existed with respect to concurrent

---

[4] The *DiPippo* matter was settled for $12 million, with no admission of wrongdoing. *See* David Propper and Isabel Keane, "Anthony DiPippo gets $12M in rape case settlement, DA says decision 'foolish…uninformed'" Lohud.com (August 14, 2020) at: https://www.lohud.com/story/news/2020/08/14/anthony-dipippo-found-not-guilty-rape-and-murder-settles-12-million-putnam-county-da-angry/3374313001/

[5] Plaintiff hereby incorporates by reference the arguments set forth in the March 15, 2024 letter to the Court.

representation of both the County and the PCDA Defendants. ECF Nos. 90, 91, 94. Thereafter, Morris Duffy Alonso & Faley ("MDAF") filed a notice of appearance on behalf of the PCDA Defendants, replacing Portale Randazzo. ECF No. 96.

On May 7, 2024, Silverman & Associates consented to the continued representation of the PCSD Defendants by Portale Randazzo, ECF No. 99, and Portale Randazzo advised the Court that based on its internal review, no conflict existed that precluded joint representation of the PCSD Defendants. ECF No. 101 at 1-2. On May 21, 2024, MDAF advised the Court that, based on its conversations with its clients, the PCDA Defendants have no objection to Portale Randazzo's continued representation of the PCSD Defendants or MDAF's representation of the PCDA Defendants. None of the law firms presented any written waiver or evidence that the Individual Defendant understood and accepted the actual or potential conflicts.

## FACTS

Resolving a disqualification motion requires a "painstaking analysis of the facts" of a case. *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 227 (2d Cir. 1977). Plaintiff hereby incorporates by reference the facts set forth in his Complaint and addresses herein only those facts necessary to resolve the instant motion.

Portale Randazzo served as counsel of record to all defendants in this matter from the action's inception until March 29, 2024, and April 26, 2024, when Portale Randazzo was removed from representing the County and the PCDA Defendants, respectively. Portale Randazzo previously represented the County and all PCSD Defendants except Rees and Asher who were not named parties in *DiPippo*. Portale Randazzo represented Rees as a non-party witness at his deposition in *DiPippo* and also represented, as non-party witnesses at their depositions, defendants Glasser and York.

3

Portale Randazzo has a long history of representing the County outside of the *Krivak* and *DiPippo* matters, including in wrongful conviction cases that allege similar civil rights violations, including *Monell* claims. *See, e.g., Haughey v. County of Putnam*, 18 cv 02861 (KMK).[6] According to PACER, Portale Randazzo principal James Randazzo has appeared in a total of 220 cases in the Southern District of New York ("S.D.N.Y."), of which at least[7] forty involved his representation of the County or one of its entities. *See* Exh. 4. Of the seventeen open cases in which Mr. Randazzo is an attorney of record in the S.D.N.Y., at least five involve his representation of the County. *See* Exh. 5.

Silverman & Associates replaced Portale Randazzo as counsel to the County on April 10, 2024. ECF Nos. 90 and 91. Silverman & Associates represented defendant Castaldo in *Hossu v. County of Putnam et al.,* 16-cv-02027-CS (S.D.N.Y.), in which Castaldo was accused of participating in the false arrest and malicious prosecution of an innocent man accused of raping a minor girl. *See* Exh. 6. Lewis Silverman – principal of Silverman & Associates – represented Patrick Castaldo from July 27, 2017, until December 18, 2019, when the case was settled for $750,000. *See* Exh. 7 at 8. In *Hossu,* as here, Castaldo was a lead investigator accused of falsifying official police reports; making material misrepresentations to courts; violating protocols for investigating child abuse allegations; and suppressing exculpatory evidence. *See* Exh. 6 ¶¶ 5, 17, 40, 74, 88-90, 113; Exh. 1 ¶¶ 38-42. As a result of this and other misconduct, *Hossu* was arrested and tried for the rape of a teen girl; he was ultimately exonerated of the charged sex crime. Exh. 6 ¶ 1.

---

[6] Frank Foster and MDAF, counsel to the PCDA Defendants, appeared on behalf of the Town of Carmel in *Haughey*. Silverman & Associates has previously represented the County. We do not believe either of these prior representations raises any conflict of interest issues.

[7] The number may be higher as Counsel relies on the PACER docket search which only shows the first defendants; thus there may be cases in which the County or one of its entities is a defendant represented by Portale Randazzo that has not been identified.

## <u>LEGAL STANDARD</u>

"The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process'" *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)) and from their responsibility to supervise members of the bar. *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975). "The purpose of the conflict rules is to ensure that a lawyer's loyalty to the client remains undivided and devoted. 'A lawyer's duty of absolute loyalty to his client's interests does not end with his retainer.'" *Galloway v. Nassau Cnty.*, 569 F. Supp. 3d 143, 146–47 (E.D.N.Y. 2021), *aff'd sub nom. Galloway v. Cnty. of Nassau*, 589 F. Supp. 3d 271 (E.D.N.Y. 2022) *quoting T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F. Supp. 265, 268 (S.D.N.Y. 1953).

In considering a motion for disqualification, a court is often faced with the need to "preserve a balance, delicate as it may be, between an individual's right to his own freely chosen counsel and the need to maintain the highest ethical standards of professional responsibility." *Emile Indus., Inc. v. Patenetex, Inc.*, 478 F.2d 562, 564–65 (2d Cir. 1973). Because disqualification of counsel has "a serious and immediate adverse effect by denying the client his choice of counsel" *Soc'y for Good Will to Retarded Children, Inc. v. Carey*, 466 F. Supp. 722, 724 (E.D.N.Y. 1979), and because motions to disqualify can be used for "tactical purposes", e.g., delay, they are generally subject to heightened scrutiny. *See Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989). Where, however, neither of these concerns are at issue – because, for example, counsel has not been selected by an individual defendant but rather provided by an employer or insurer, or because the motion to disqualify has been brought without delay, the need for heightened scrutiny is lessened. *Cf. NCK Organization Ltd. v. Bregman*, 542 F.2d 128

5

(2d Cir. 1976) (long time counsel selected and hired by client); *In re I Successor Corp.*, 321 B.R. 640, 662 (Bankr. S.D.N.Y. 2005) *quoting Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 574 (2d Cir. 1973) (in extreme cases delay given some weight).

Nor does "the right of counsel [] override the broader societal interests in the effective administration of justice…or in the maintenance of public confidence in the integrity of our legal system." *Wheat v. United States*, 486 U.S. 153, 158 n.2 (1988) (internal quotations and citations omitted). The Second Circuit has recognized "the potential for conflict is hardly limited to the trial context but can infect, actually or potentially, a broad spectrum of activities," *Cinema 5 Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976).

In the Second Circuit, courts disqualify attorneys "only in essentially two kinds of cases: [i] where an attorney's conflict of interests ... undermines the court's confidence in the vigor of the attorney's representation of his client, or more commonly [ii] where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation." *Nyquist*, 590 F.2d at 1246. "And these two kinds of cases roughly match up to two types of conflicts that warrant disqualification in this Circuit: (i) concurrent-representation conflicts (when an attorney 'simultaneously represent[s]' two adverse parties); and (ii) successive-representation conflicts (when an attorney represents a client whose interests are adverse to those of a 'former client'). *Akagi v. Turin Hous. Dev. Fund Co.*, 2017 U.S. Dist. LEXIS 41321, at *27 (S.D.N.Y. Mar. 22, 2017) *citing Hempstead*, 409 F.3d at 133.

"The standard for disqualification varies depending on whether the representation is concurrent or successive." *Hempstead*, 409 F.3d at 133. Concurrently representing adverse parties "is prima facie improper." *GSI Commerce Sols., Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010) (internal quotation marks & citation omitted). To rebut a prima facie

disqualification case, "it is incumbent upon the attorney to 'show, at the very least, that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of his representation.'" *GSI*, 618 F.3d at 209 (*quoting Cinema 5*, 528 F.2d at 1387) (emphasis in original). This Circuit's "per se[] rule" against concurrent adverse representations "shifts the burden to the attorney opposing disqualification." *Brown & Williamson Tobacco Corp. v. Pataki*, 152 F. Supp. 2d 276, 281 (S.D.N.Y. 2001) (*quoting Cinema 5*, 528 F.2d at 1387). And "this is 'a burden so heavy that it will rarely be met.'" *GSI*, 618 F.3d at 209 (*quoting Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 749 (2d Cir. 1981)).

In contrast, a conflict arising from successive representation is judged by a less demanding standard. The RPC[8] precludes a lawyer from representing another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent[9], confirmed in writing. RPC Rule 1.9(a). Where the former client gives informed consent, in writing, the lawyer "shall not thereafter: (1) use confidential information of the former client protected by Rule 1.6 to the disadvantage of the former client . . . or (2) reveal confidential information of the former client protected by Rule 1.6." RPC Rule 1.9(c). *Accord Hempstead*, 409 F.3d at 133 (setting forth standard in analogous case where a former client of an adverse party's counsel seeks disqualification).

---

[8] Rules of Professional Conduct, Code of Professional Responsibility, opinions of professional associations, and state disciplinary rules provide beneficial guidance. *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005).

[9] "'Informed consent' denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated information adequate for the person to make an informed decision, and after the lawyer has adequately explained to the person the material risks of the proposed course of conduct and reasonably available alternatives." RPC Rule 1.0(j).

"[W]here counsel have simultaneously represented clients with differing interests, the standard for concurrent representation applies even if the representation ceases prior to the filing of a disqualification motion." *Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 209 (S.D.N.Y. 2009). "This principle is based on the rationale that if the rule was otherwise, an attorney could always convert a present client into a "former client" by choosing when to cease to represent the disfavored client." *Id.* (internal quotation marks and citations omitted). The higher standard for concurrent representation (rather than the standards for successive representation) should apply even when counsel was terminated by the client prior to filing a disqualification motion[10], because "[c]ounsel should not be rewarded for delaying resolution of a conflict issue by being accorded a less demanding disqualification standard." *Id.* Here, either standard requires Portale Randazzo's disqualification.

## ARGUMENT

This case perfectly illustrates the Second Circuit's expressed concerns with defense counsel's multiple representations in Section 1983 cases. *See, e.g., Dunton v. City of New York*, 729 F.2d 903, 907 (2d Cir. 1984); *Blake v. Race*, No. 01 CV 6954 (SJ), 2005 U.S. Dist. LEXIS 64588, at *11 (E.D.N.Y. Jan. 11, 2005) (citations omitted). *Accord Tiffany v. Vill. of Briarcliff Manor*, No. 99-9505, 2000 U.S. App. LEXIS 15812, at *5, n.1 (2d Cir. June 29, 2000) (expressing "concern that the court and parties were not cognizant of the conflict that existed here" and noting that "[w]hile *Dunton* stopped short of creating an automatic rule of disqualification in such circumstances, the Court there strongly advised against multiple representation in § 1983 cases") (citation omitted).

---

[10] Here, while Portale Randazzo was technically removed before the filing of the instant motion, Plaintiff's March 15 letter created a likelihood that such motion would be forthcoming.

Plaintiff has a strong interest in ensuring the integrity of these proceedings, including by making certain that opposing counsel is not operating under a conflict of interest, that the defendants are fully informed of any conflict, independently advised, and given the opportunity to waive any conflict of potential conflicts of interest at this relatively early stage of the case, when documentary discovery is still ongoing. *See, e.g., In re Fischer*, 202 B.R. 341, 352 (E.D.N.Y. 1996) ("both opposing counsel and the court have independent obligations to examine a possible attorney-client conflict"); *Muniz v. Re Spec Corp.*, 230 F. Supp. 3d 147, 154 (S.D.N.Y. 2017) ("federal courts . . . generally take the view that any party to a lawsuit may raise a potential conflict."); *United States v. Schwarz*, 283 F.3d 76 (2d Cir. 2002) (describing prosecution's motion to disqualify conflicted defense counsel).

In its attempt to cure the conflicts originally raised in Plaintiff's March 15 Letter by replacing Portale Randazzo as counsel to the County and the PCDA Defendants, the County and its insurer acknowledged Portale Randazzo's actual or potential conflicts of interests, which must arise, at least in part, from the differing interests of the County, the PCSD Defendants, and the PCDA Defendants. While the change of counsel may have cured some of the representational conflicts of interest, it did not resolve the underlying adverse or differing interests among the defendants.

For the reasons set forth below, each of the law firms presently representing the County, the PCSD Defendants and the PCDA Defendants must be disqualified – due to successive representations of those with adverse interests to current clients; concurrent representation of clients with adverse interests to one another; and/or an ongoing attorney-client relationship that creates a personal and professional conflict of interest. Under the unique circumstances of this

case, disqualification is required to ensure the independence and vigor of legal representation for each defendant.  *Nyquist*, 590 F.2d at 1246 (citations omitted).  *Accord Blake, supra* at 11-12.

## I. **Portale Randazzo LLP and Silverman & Associates Must Be Disqualified From Representing Any Party In This Litigation**

### A. **Portale Randazzo's Concurrent Representation of the County, the PCSD Defendants and the PCDA Defendants Requires Disqualification**

Because Portale Randazzo concurrently represented the County, the PCSD Defendants and the PCDA Defendants – both during the three years of the *DiPippo* litigation and during the seven months between the filing of the Complaint in this matter and Portale Randazzo's removal from the representation of the County and the PCDA Defendants – Portale Randazzo must meet the very heavy burden of demonstrating "at the very least, that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of his representation.'" *GSI*, 618 F.3d at 209 (*quoting Cinema 5*, 528 F.2d at 1387) (emphasis in original).  Portale Randazzo cannot meet this very heavy burden.  Even if it could, its representation of the County in past and current federal litigation against it and its entities is fatal to Portale Randazzo's representation of the PCSD Defendants, given the adverse interests of the County and the PCSD Defendants.

*United States v. Schwarz*, 283 F.3d 76 (2d Cir. 2002) demonstrates why Portale Randazzo must be disqualified.  *Schwarz* involved the criminal prosecution and conviction of several police officers, including Schwarz, for civil rights violations and conspiracy to obstruct justice stemming from the officers' in-custody sexual assault of Abner Louima. *Id.*  Schwarz and another police officer defendant were represented by members of the same law firm, Worth, Longworth Bamundo LLP (the "Worth Firm") at separate trials.  *Id.* at 81. The Worth firm also had an ongoing representation agreement with the PBA, for a substantial fee, paid in intervals. *Id.* The representation agreement was subject to renewal, presumably performance-based.  *Id.* at

92.  While the criminal prosecution was pending, Louima brought a parallel civil rights lawsuit against the PBA, its president, and the criminal defendants (members of the PBA) alleging a conspiracy to injure Louima, to cover up the conspiracy, and negligent supervision and monitoring.  *Id.* at 82.  The government sought disqualification of the Worth Firm based on its concurrent representation of the criminal defendants and the Worth Firm's ongoing representation of the PBA, whose members could be called as witnesses in the criminal trial.  *Id.* at 81-82.  Both defense counsel and the individual defendants averred that there was no conflict, in part because one defendant could exculpate the other and it was anticipated that the defendants would be tried separately.  *Id.* at 81.  The district court overseeing the criminal trial advised the defendants of some potential conflicts arising out of the concurrent representation of the PBA and its president on the one hand, and the criminal defendants on the other, noting that the PBA's interests "might differ . . .in, for example, pleading guilty, testifying, or cross-examining witnesses, and that these different interests might affect counsel's ability to offer advice that was in the defendants' best interests." *Id.* at 83.  Finally, the district court judge observed that "it would be unrealistic to suppose that the beneficiaries of a ten-million-dollar contract, which evidently the [Worth Firm] hopes will be renewed in the year 2000, would be indifferent to the welfare of the PBA." *Id.* The court appointed independent conflict counsel to each defendant and held a *Curcio* hearing, at which each defendant waived any conflicts arising from the Worth Firm's concurrent representation.  The defendants were convicted following separate trials.  On appeal, Schwarz argued that his trial attorney's loyalties to the PBA and his pecuniary interest in the PBA retainer created an actual conflict of interest that was so serious as to be unwaivable. *Id.* at 90. The Second Circuit agreed and vacated Schwarz's conviction on this basis. *Id.* at 91-92. Importantly, the court found that this unwaivable conflict of interest existed even though the

"Worth firm had been barred by the district court from formally representing the PBA or any of its members in the Louima civil suit" because counsel "nevertheless had an unalloyed duty to the PBA as his client to refrain from any conduct injurious to its interests" and, because of counsel's lucrative contract with the PBA, counsel "had a strong personal interest in refraining from any conduct to which the PBA might object." *Id.* at 91.

The same is true here. First, Portale Randazzo has an unwaivable conflict of interest arising out of its professional obligations not to harm the County, any of the PCSD Defendants, or any of the PCDA Defendants as current and former clients. As in *Schwarz*, Portale Randazzo cannot, for example, employ any defense strategy that shifts blame from any or all of the PCSD Defendants to either the County or any or all of the PCDA Defendants.

Portale Randazzo would thus be precluded from arguing or presenting testimony and evidence that any of the individual PCDA Defendants engaged in misconduct. This includes but is not limited to testimony or evidence that it was former District Attorney Kevin Wright, a PCDA Defendant, who controlled the police investigation into Krivak, caused Krivak's arrest, or ensured that Denise Rose would receive a favorable resolution to her unrelated felony criminal charges in exchange for her agreeing to serve as a false witness against Mr. Krivak and then covered up that corrupt agreement. Compl. ¶¶ 58-62; 103; 155-156; 191; 207. But PCSD Defendants have already provided deposition testimony in *DiPippo* (when they were represented by Portale Randazzo) adverse to Defendant Wright. For example, Defendant Castaldo testified to Defendant Wright's involvement in the Krivak investigation and knowledge of exculpatory information. Exh. 8 at 477 (Castaldo told Quick to "find out what's going on with the district attorney" at the start of the April 24, 1996 Rose interview); *id.* at 548-550 (Castaldo did not listen to surreptitious recording in which Adam Wilson tells his friend, a confidential informant,

that police fed him details of the crime and made him sign a statement implicating Krivak and that he did not witness any crime against JW but district attorney notified about tape by another officer). Defendant Quick testified to a two-hour meeting with the district attorney prior to Krivak's arrest in which the district attorney said he wanted to run the investigation. Exh. 9 at 127-128. Defendant Turner described a meeting with Defendant Wright before Krivak's arrest at which Wright sought to have Turner misrepresent witness statements concerning evidence. Exh. 10 at 200-206. In order to maintain loyalty to its former PCDA Defendant clients – and to the County, which will ultimately be liable for the acts of PCDA – Portale Randazzo cannot use this information to defend their current PCSD Defendant clients.

Portale Randazzo also cannot employ a defense strategy that shifts blame from the individual PCSD Defendants to the County, including that which would place the blame on the County's failure to train or supervise that led to Krivak's wrongful investigation, prosecution or conviction. Again, Defendants Turner and Castaldo have already provided this damning testimony regarding the complete lack of training or oversight on fundamental policing and legal issues, including the collection, preservation, and disclosure of exculpatory evidence. *See* Exh. 10 at 125-129, 177-184 (no written rules and regulations regarding *Brady* obligations; never discussed *Brady* with detectives he supervised; when he supervised Defendant Castaldo, had no idea what Castaldo's understanding of *Brady* was and never discussed it with him; up to the detective's discretion to tell the district attorney about exculpatory material; no requirement to document exculpatory interviews; Turner's job is to ensure the success of the prosecution and not to help the defense lawyers); *See* Exh. 8 at 104-107 (defining impeachment evidence as "basically what they are trying to do to the President of the United States is to impeach him, bring up charges against him"; "heard [of] Brady, but I don't know the case. I'm not familiar

with the case"; never received any training on the obligation to write down and turn over to the prosecutor exculpatory information he received as a police investigator).  Unconflicted counsel would seek to shield Castaldo and other non-supervisory defendants from liability, or mitigate their culpability, by illustrating the lack of training and oversight from the County, whether via supervisors, PCSD, or PCDA[11].  Portale Randazzo can't do this without violating his obligations to the County, to PCDA, or to the supervisory defendants of the PCSD:  Turner and Stephens, who are also Portale Randazzo's clients.

On these facts, Portale Randazzo cannot meet its high burden of showing that "there will be no actual or apparent conflict in loyalties or diminution in the vigor of [the] representation." *J.P. Morgan Chase Bank v. Liberty Mutual Ins. Co.*, 189 F. Supp. 2d 20, 23 (S.D.N.Y. 2002) (citation omitted).

Moreover, Portale Randazzo has a longstanding and presumably lucrative attorney-client relationship with the County, which represents between 30 and 40 percent of Mr. Randazzo's S.D.N.Y. cases. Exh. 4.  Like the Worth Firm in *Schwarz*, this ongoing attorney-client relationship presents an unwaivable conflict of interest arising from Portale Randazzo's professional and financial interest in maintaining a good business relationship with the County that could cause it to "refrain[] from any conduct to which [the County] might object," including "hamper[ing]" the County's defense in the instant civil suit.  *Schwarz, supra* at 91-92.  This conflict requires disqualification.  *Id.*

---

[11] Neither PCSD nor PCDA is a defendant in this case.

### B. Portale Randazzo's Successive Representation of the County, the PCSD Defendants and the PCDA Defendants, and Silverman & Associates's Successive Representation of Defendant Castaldo Also Require Disqualification

Disqualification is also required by Portale Randazzo's successive representation of the County, the PCSD Defendants, and the PCDA Defendants in both the same and a substantially related matter (i.e., *DiPippo v. Putnam County, et al.,* 17-cv-7948 (S.D.N.Y.) (NSR)) and representation of individual defendants Rees, Glasser, and York as non-party witnesses in *DiPippo*. Likewise, Silverman & Associates must be disqualified from representing the County because of its prior representation of defendant Castaldo in *Hossu*.

Both *DiPippo* and *Hossu* are "substantially related matters." *DiPippo* and the instant cases arise from the same crime, the same investigation, the same misconduct (at least through DiPippo's 2016 exoneration), and the same accused wrongdoers. *Compare* Exh. 1 *with* Exh. 2. *Hossu* is substantially related because it involves accusations of the same type of misconduct by Castaldo in a case involving the sexual assault of a minor.[12] *Compare* Exh. 1 *with* Exh. 6. *See Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983) (issues involved in the prior representation and the current case are identical or essentially the same); *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 239 (2d Cir. 2016) ("A 'substantial relationship' exists where facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation.") (citation omitted). Importantly, Castaldo's misconduct in both *DiPippo* and *Hossu* will be critical proof of a *Monell* claim against the County. It is inconceivable that Silverman & Associates, the law firm that previously defended Castaldo

---

[12] On information and belief, Castaldo's misconduct in connection with the Hossu investigation and prosecution, as well as his misconduct in another case in which he beat a shackled inmate and provided false, sworn police reports concerning that incident, caused then-District Attorney Adam Levy to develop concerns about Castaldo's policing. As a result of these concerns, DA Levy initiated the joint reinvestigation of this case, together with the Attorney General's Conviction Review Unit. *See* Exh. 1 ¶¶ 50-51; 242-246.

against the *Hossu* claims of misconduct will now defend the County against Plaintiff's claims, including Plaintiff's *Monell* claim, which will rely on the *Hossu* claims and settlement as proof. This prior representation presents a critical risk that Silverman & Associates could use one client's confidential information to the other client's detriment, violating the duty of loyalty to the other client.

Because a municipality may be held liable under 42 U.S.C. § 1983 for employees' actions taken pursuant to municipal policy, the interests of a municipality and its employees as defendants in a 1983 action are in conflict. *Dunton*, 729 F.2d at 907. This is because

> A municipality may avoid liability by showing that the employee was not acting within the scope of his official duties, because his unofficial actions would not be subject to municipal policy. The employee, by contrast, may partially or completely avoid liability by showing that he was acting within the scope of his official duties. If he can show that his actions were pursuant to an official policy, he can at least shift part of his liability to the municipality. If he is successful in asserting a good faith immunity defense, the municipality may be wholly liable because it cannot assert the good faith immunity of its employees as a defense.

*Id.* (citing *Owen v. City of Independence*, 445 U.S. 622 (1980)).

During the course of their respective representations, Portale Randazzo and Silverman & Associates obtained "confidential information of the former client protected by Rule 1.6." *See* RPC Rule 1.6(c). Disqualification is necessary to protect against the potential revelation or use of that confidential information to the disadvantage of the County, Castaldo or any other PCSD Defendant, the PCDA Defendants. *Id. See also NCK Organization, Ltd. v. Bregman*, 542 F.2d 128, 135 (2d Cir. 1976) ("Requiring attorneys to abstain from representation involving potential disclosure of former clients' confidences also frees lawyers from the difficult task of erecting Chinese walls in their own minds between what is confidential and what is not").

Decisions on analogous motions of former clients to disqualify prior counsel[13] are clear that the mere possibility of former counsel's use or disclosure of confidential information requires disqualification – even when disclosure is inadvertent. *See NCK Organization, Ltd.*, 542 F.2d at 134 (The possibility that these confidences could be breached "is sufficient to make disqualification a necessary and desirable remedy to enforce the lawyer's duty of absolute fidelity and to guard against the danger of inadvertent use of the confidential information") *quoting Ceramco, Inc. v. Lee Pharmaceuticals*, 510 F.2d 268, 271 (2d Cir. 1975); *Hull v. Celanese Corp.*, 513 F.2d 568 (2d Cir. 1975) ("some evidence" of the "possibility" that counsel "consciously or unconsciously" transmitted some confidence). The Second Circuit has recognized that one form of trial taint "arises when an attorney places himself in a position where he could use a client's privileged information against that client." *United States v. Prevezon holdings Ltd.,* 839 F.3d 227, 241(2d Cir. 2016) *quoting Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005).

Neither party to a motion to disqualify needs to specify the precise confidential information, or how it could be disclosed or used against the former client, because requiring such specificity would place too high a burden on the moving party to obtain information it cannot, and/or would require the very disclosure that the RPC seeks to protect. *See Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 740 (2d Cir. 1978) ("In order to grant a disqualification

---

[13] In these cases, to disqualify an attorney for prior representation, the Second Circuit requires a movant to show:

> (1) That the moving party is a former client of the adverse party's counsel; (2) that a substantial relationship exists between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) that the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983).

motion, a court should not require proof that an attorney actually had access to or received privileged information while representing the client in a prior case. Such a requirement would put the former client to the Hobson's choice of either having to disclose his privileged information in order to disqualify his former attorney or having to refrain from the disqualification motion altogether.") *Accord NCK Organization, Ltd.*, 542 F.2d at 134–135; *Hull*, 513 F.2d at 570.

Nevertheless, Portale Randazzo and Silverman & Associates necessarily obtained from their clients the very types of confidential information that has led courts in this Circuit to disqualify counsel. *See, e.g., Freedman v. Rakosi*, 674 F. Supp. 3d 105, 111 (S.D.N.Y. 2023) (a party's settlement strategy; its "bottom line" in settlement; its "views and impressions of [the] litigation;" and its "opinions and impression of even public documents and facts.") *citing Benevida Foods, LLC v. Advance Mag. Publishers Inc.,* No. 15-CV-02729 (LTS) (DF), 2016 U.S. Dist. LEXIS 81186, 2016 WL 3453342, at *11 (S.D.N.Y. June 15, 2016); *Zalewski v. Shelroc Homes, LLC*, 856 F. Supp. 2d 426 (N.D.N.Y. 2012) (prospective former client had disclosed approach to the litigation and possible settlement strategies); *Fierro v. Gallucci,* No. 06-CV-5189, 2007 U.S. Dist. LEXIS 89296, at *2 (E.D.N.Y. Dec. 4, 2007) ("underlying facts of the case . . . potential defenses available to the defendants, dollar amounts at risk, and relevant case law and other legal theories applicable to the facts in issue"); *Nisselson v. Empyrean Inv. Fund, LP (In re MarketXT Holdings Corp.)*, Nos. 04-12078(ALG), 05-01268, 2005 Bankr. LEXIS 3628 (Bankr. S.D.N.Y. Apr. 20, 2005), (party's analysis of strengths/weaknesses of the claims and defenses).

As in *NCK Organization, Ltd.* and *Hull*, disqualification of Portale Randazzo and Silverman & Associates is not only required, but "forwards 'the public's interest in maintaining

the highest standards of professional conduct and the scrupulous administration of justice.'"

*NCK Organization, Ltd.*, 542 F.2d at 135 *quoting Hull*, 413 F.2d at 569. *See also T.C. Theatre Corp. v. Warner Bros. Pictures*, 113 F. Supp. 265, 269 (S.D.N.Y. 1953) (necessary to ensure the free flow of information between attorney and client); *Nyquist*, 590 F.2d at 1246 (preservation of the integrity of the adversary process).

## II. Portale Randazzo and MDAF Must be Disqualified Due to the Differing Interests Between their Concurrently Represented Individual Defendant Clients

Rule 1.7 of the New York Rules of Professional Conduct precludes a lawyer from representing a client if a reasonable lawyer would conclude that the representation will involve the lawyer in representing differing interests, except that if the lawyer believes she will be able to provide competent and diligent representation to each affected client, and each affected client gives informed consent, confirmed in writing, a lawyer may represent such a client. RPC Rule 1.7. Under RPC 1.7(b)(1) a waiver is not effective unless a reasonable lawyer would believe the representation is appropriate.

Courts within the Second Circuit have long recognized that, where co-defendants have differing interests – including differing degrees of knowledge, responsibility, culpability, exposure to damages, and different defenses and likelihoods of success – disqualification may be necessary. *See Schwarz, supra* at 92-93; *Blake v. Race*, No. 01 CV 6954 (SJ), 2005 U.S. Dist. LEXIS 64588, at *12 (E.D.N.Y. Jan. 11, 2005). The issues identified by the trial judge in *Schwarz* when offering the defendants a waiver are equally applicable here:

> (1) defense counsel might not offer independent advice concerning the benefits of [settling] or testifying in court because it would be detrimental to "the other one of you"; (2) there may be some defense that could be made or evidence offered that helps one of you but hurts the other one; (3) the attorney may not be able to independently judge whether to cross-examine or impeach a witness that helps one of you but hurts the other one or whether to

> offer reputation evidence or argue that one of you is less [culpable]
> than the other one; and (4) defense counsel might inadvertently or
> deliberately reveal confidences covered by the attorney-client
> privilege to his partner representing the other defendant.

*Schwarz*, 283 F.3d at 82.

Critically, "[t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict." *United States v. Huawei Techs. Co.*, No. 18-CR-457, 2020 U.S. Dist. LEXIS 32144, at *3 (E.D.N.Y. Feb. 25, 2020) quoting *Wheat v. United States*, 486 U.S. 153, 162 (1988). The following represent just some examples of the Individual Defendants' potentially conflicting interests that require disqualification of Portale Randazzo and MDAF.

### A. Supervisory vs. Non-Supervisory Defendants

Courts have recognized that supervisory and non-supervisory defendants may have conflicts requiring separate counsel. *Blake, supra* at *15. Defendants Thoubboron, Turner, and Stephens had supervisory roles within the PCSD, while the remaining PCSD Defendants did not. Exh. 1 ¶¶ 27-28; 30-31; 35. District Attorneys Tendy and Wright as elected district attorneys were supervisors, and Tendy directly supervised Glasser, Krauss, and Cilento. *Id.* ¶ 49-50; 55.

A plaintiff need not establish a supervisory defendant's direct participation in conduct to satisfy the "personal involvement" requirement. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). It is sufficient to show "[] the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, [] the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, [or] the defendant was grossly negligent in supervising subordinates who committed the wrongful acts" *Id.*

Thus, the supervisory defendants have an incentive to not only distance themselves from the acts of the non-supervisory defendants, but also to deny any involvement in or knowledge of

the acts, policies, or customs of the non-supervisory defendants. Contrarily, the non-supervisory defendants have an interest in minimizing their own involvement and/or responsibility for misconduct – potentially by advancing a "following procedure or supervisor's directives" defense.[14] These incentives place the supervisory and non-supervisory Defendants "at odds" to such a degree that they cannot be represented, as they are now, by the same counsel. *Galloway*, 589 F. Supp. 3d at 279.

At his sworn deposition in *DiPippo*, Turner testified that Quick and Castaldo had broad discretion in how they conducted the JW investigation, as it was their case, not his. *See* Exh. 10 at 164-65. In contrast, Castaldo testified that Turner was the "boss" and his direct supervisor on the JW investigation, that he told Turner "everything", reported directly to him "daily", and followed Turner's orders and directives in conducting the investigation. *See* Exh. 8 at 136-137. Further, Castaldo testified that he "didn't deviate from policy, procedure or [] training at any time." *Id.* at 138-139. Turner testified that to the extent that there were policies that governed PCSD detectives and their investigatory work, he either delegated the writing of those policies to Stephens, or they were the responsibility of the Sheriff or District Attorney. *See* Exh. 10 at 359-364.

Plaintiff alleges that defendant Cilento engaged in several acts of misconduct, including participating with Tendy, the District Attorney, in efforts to intimidate witnesses and suppress exculpatory evidence. Exh. 1 ¶¶ 77. A viable defense for Cilento is to place the blame for any wrongdoing on the District Attorney. It is thus prudent to ensure that they have separate counsel in the event that their recollections differ as to the meeting, including its stated purpose.

---

[14] This defense would support Plaintiff's *Monell* claim, creating an additional conflict for Portale Randazzo.

## B. Differing Knowledge, Participation, and Culpability for Alleged Misconduct

Plaintiff alleges that PCSD Defendants fabricated evidence against him and suppressed favorable evidence tending to prove his innocence and the guilt of Howard Gombert. Exh. 1 ¶¶ 104-151. Plaintiff further alleges that the PCDA Defendants repeatedly violated court orders by suppressing favorable evidence they were directed to disclose to Mr. Krivak. *Id.* ¶¶ 265, 276, 299. The Individual Defendants have differing roles in, knowledge of, and culpability for these various acts of misconduct – which unconflicted counsel might incorporate into a defense strategy to protect their individual client without regard to the effect on other defendants. Counsel that represents multiple defendants cannot mount such a particularized defense.

***Fabricating Statements:*** Plaintiff alleges that police fabricated statements implicating Krivak and coerced witnesses including Adam Wilson, William MacGregor, and defendant Denise Rose (who conspired with the defendants), to adopt those police-drafted statements. Plaintiff further alleges that his van was illegally searched numerous times and that evidence purportedly linking him to JW was planted by PCSD Defendants. *Id.* ¶¶ 41, 46. Defendants Castaldo and Quick were present at the interrogations of Krivak, Wilson, MacGregor and Rose; Stephens participated in Krivak and Wilson's interrogations, at least by administering polygraph examinations, and an unknown additional person may have been present at the interrogations of MacGregor, Rose, and Wilson. *Id.* ¶¶ 207-225. Quick hand wrote all of the witness statements. *Id.* ¶¶ 177. Plaintiff has already developed evidence that the disputed "confession" does not reflect Krivak's natural language, and that the "confession" and the purported statements of Wilson, MacGregor and Rose share numerous similarities in word choice and narrative content,

order, and structure.  *See* Exh. 11 at 8-19, 30-31.[15]  This supports Plaintiff's contention that all of the statements inculpating Plaintiff were created by one of more of the PCSD defendants. Exh. 1 ¶¶ 224-229.  This evidence of police fabrication, together with witness testimony and other evidence, will place pressure on those PCSD Defendants involved in the witness interviews and interrogations to explain away their involvement and/or blame others, creating a conflict for a single attorney representing all of these defendants.  *See e.g., Schwarz*, 283 F.3d at 92–94 (describing counsel's conflict in mounting a defense that pointed to another to whom counsel was loyal).

In another example, after Krivak signed the "confession", Stephens conducted a follow up interview with him, which he documented.  *See* Exh. 12.  Stephens testified he asked Krivak what Castaldo and Quick told him "that finally convinced you to tell the truth?" and Krivak responded "They told me if it wasn't just a murder I could plead to something else."  Exh. 13 at 2973-2975.  According to Krivak's expert in confessions and interrogations, Dr. Kyle Scherr, this is a significant exchange because it shows the use of minimization and implied promises of leniency, which research has found are risk factors for false confessions. *Id.* at 4489-4492. Although Quick and Castaldo testified that Quick documented every word spoken during Krivak's interrogation, Quick's documentation does not reflect that he or Castaldo told Krivak "if it wasn't just a murder I could plead to something else." *See, e.g., id.* at 2291-2293, 3213-3214. Given the testimony of Dr. Scherr, whether this was said, and by whom, will be considered in apportioning liability on the issue of Mr. Krivak's false confession.

---

[15] Mr. Krivak's proffered expert in forensic linguistics, Dr. Robert Leonard, was not permitted to testify at Krivak's trial because, under the *Frye* standard, the trial court found his proffered testimony was within the ken of the average juror.  Exh.15.  Plaintiff does not believe his testimony would be barred under a *Daubert* analysis.

***Illegal Van Searches and Planting Evidence:***  Defendant Rees conducted and documented at least three illegal searches of Krivak's van.  According to Rees, he had no role in choosing what to search and when to search it; rather, he and others were "directed by Harold Turner or Quick or Castaldo to search certain items".  Exh. 14 at 30.  Rees further testified that Turner personally gave him the keys to Krivak's van to conduct a search later determined to be illegal because it was without a warrant.  *Id.* at 111.  Plaintiff expects that significant fact development concerning these searches will occur during this litigation, and that the various PCSD Defendants will have differing levels of knowledge, participation, and culpability for the illegal searches of Mr. Krivak's van.

***Suppression of Exculpatory Evidence:***  Plaintiff alleges numerous instances of suppression of exculpatory evidence.  Exh. 1 ¶ 265.  One example includes the suppression of a surreptitiously recorded conversation between police informant Scott Olivieri and Adam Wilson, in which Wilson – unaware that he was being recorded – describes how defendants Castaldo and Quick fed him details about the crime and coerced him to sign a false, police drafted statement.  *Id.* ¶¶ 167-168. This videotape was suppressed until 2016.  In his deposition in *DiPippo,* Castaldo made no documentation of this recording, denied ever listening to the tape, instead testifying that an unknown other officer viewed the tape, and that this officer or perhaps someone else provided it to the District Attorney.  Exh. 8 at 541-552.  We anticipate that this litigation will develop additional information concerning how this critical exculpatory evidence was suppressed for decades, and who was responsible for that suppression.  We further anticipate that this will place the various PCSD Defendants "at odds" with one another.

***Violating Court Orders:***  Plaintiff alleges that the PCDA Defendants repeatedly violated court orders, including by failing to disclose exculpatory material the court specifically directed

them to turn over.  Compl. ¶¶ 303-305; 306-312; 313-316; 337.  These various incidents

implicate defendants Krauss, Glasser, and Tendy and are likely to place each of these defendants

"at odds" with the others.  *Id.*  For example, the prosecution was ordered to disclose the police

personnel files but failed to provide all relevant material, resulting in sanctions for this discovery

violation.  Exh. 13 at 4956-4964.  Glasser was responsible for the review and production of these

files.  *See, e.g.*, *id.* at 4777-4780.  Likewise, the trial court ordered the production of all materials

relating to Tendy and Cilento's visit to see Adam Wilson, which was also suppressed.  *Id.* at

3282-3290.  Finally, the trial court ordered Krauss to turn over all materials relating to the case

in which she testified to witnessing Castaldo threaten a detainee, and those materials were not

disclosed until after the prosecution rested.  *Id.* at 5269-5271.  The PCDA Defendants either

claimed to have produced all of the responsive materials, or claimed that there were none.  In

fact, in each instance, the PCDA Defendants suppressed the materials – as was ultimately

discovered near the end of Mr. Krivak's 2023 trial.  The discovery of the PCDA Defendants'

suppression of this evidence in violation of multiple court orders led the Court to impose

sanctions.  *Id.* at 5288-5291.  We anticipate that this litigation will develop information relating

to each PCDA Defendants' involvement in these incidents, the role of each of the PCDA

Defendants (including the District Attorney himself) in the decisions to disregard court orders,

and the role of the Office's policies and procedures in ensuring compliance with the law and

judicial orders.  All of this is likely to put the PCDA Defendants "at odds" with one another.

### C.  Differing History of Misconduct

Another area of conflict likely to emerge relates to the defendants' histories of

misconduct and the effect of that history on the various defendants' credibility, culpability, and

punitive damages.  Defendant Stephens played a strikingly similar role in another wrongful

conviction of a teenager, Jeffrey Deskovic, accused of the rape and murder of a minor. Exh. 1 ¶¶ 35, 217. Stephens was the only defendant in that case to go to trial, was found culpable for violating Deskovic's rights and the jury awarded $41 Million in damages. Likewise, Defendant Castaldo has a documented history of abusing and threatening detainees, including in interrogations; filing false sworn police reports; and lying to courts. *See Id.* at ¶¶ 308-311; Exh. 6. Indeed, defendant Krauss witnessed one such event, which she described in a deposition in an unrelated case.[16] That some PCSD Defendants have negative histories of misconduct, including prior judgments against them, creates a conflict with the other PCSD Defendants, who may seek to cast blame on these known bad actors or merely distance themselves from these bad actors. Regardless, these individuals cannot be represented by one attorney.

### III. The Conflicted Firms Should Be Disqualified Now to Ensure the Integrity of the Proceedings, Prevent Delay, and Promote Efficiency

The foregoing establishes that there is a real risk that the trial will be tainted if the three law firms currently representing the defendants are not disqualified. *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 388 (S.D.N.Y. 2010) (*quoting U.S. Football League v. Nat'l Football League*, 605 F. Supp. 1448, 1452 (S.D.N.Y. 1985)). Should the Court find that the specific allegations set forth herein raise doubts about whether a conflict exists, that doubt should be resolved in favor of disqualification. *Felix v. Balkin*, 49 F. Supp. 2d 260, 267 (S.D.N.Y. 1999) (internal quotation marks and citation omitted). Disqualification should occur now, while documentary discovery is ongoing, in order to ensure the integrity of the

---

[16] This creates yet another conflict for Portale Randazzo, who previously represented PCDA Defendants including Krauss and currently represents PCSD Defendants, including Castaldo. If Portale Randazzo is not disqualified, then there is a risk that a former client – Krauss – will testify against a current client, Castaldo, concerning misconduct strikingly similar to that at issue here.

proceedings, prevent any further delay, and promote efficiency and judicial economy. *Schwarz, supra*.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court disqualify

Portale Randazzo; Morris Duffy Alonso & Faley; and Silverman & Associates and grant

Plaintiff such other and further relief as the Court deems just and proper.

Dated: June 24, 2024
New York, New York

/s/Karen A. Newirth /s/Oscar Michelen /s/ Jeffrey Deskovic
Karen A. Newirth Oscar Michelen Jeffrey Deskovic
Newirth Law PLLC Cuomo LLC Law Offices of J. Deskovic PLLC
43 West 43rd Street, Suite 160 200 Old Country Road 3148 East Tremont Avenue
New York, New York 10036 Mineola, NY 11501 Bronx, NY 10465

*ATTORNEYS FOR PLAINTIFF ANDREW KRIVAK*