UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------X
ANDREW KRIVAK, JR.,                                                    Case No.: 7:23-cv-06960 (KMK)

                                          Plaintiff,

     -against-

PUTNAM COUNTY, Putnam County Sheriff's
Department Sheriff ROBERT THOUBBORON, in his
individual capacity; Putnam County Sheriff's Department
Officers HAROLD TURNER, DANIEL STEPHENS,
PATRICK CASTALDO, WILLIAM QUICK, JOHN
DANIEL REES, WILLIAM ASHER, in their individual
capacities; Putnam County District Attorneys ROBERT V.
TENDY and KEVIN WRIGHT, in their individual capacities;
Putnam County Assistant District Attorneys LARRY
GLASSER; CHANA KRAUSS; and CHRISTOPHER
YORK, in their individual capacities; District Attorney
Investigator RALPH CILENTO in his individual capacity;
and DENISE ROSE,

                                           Defendants.
---------------------------------------------------------------------------X

## Memorandum of Law in Opposition to Plaintiff's Motion to Disqualify

                              MORRIS DUFFY ALONSO FALEY & PITCOFF
                              *Attorneys for Defendants*
                              DA ROBERT V. TENDY, DA KEVIN WRIGHT,
                              ADA LARRY GLASSER, ADA CHANA
                              KRAUSS, ADA CHRISTOPHER YORK, and DA
                              Inv. RALPH CILENTO
                              101 Greenwich Street, 22nd Floor
                              New York, New York 10006
                              Tel.: (212) 766-1888
                              Fax: (212) 766-3252

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

RELEVANT FACTUAL BACKGROUND............................................................................... 1

ARGUMENT............................................................................................................................... 3

   I.   There are no actual conflicts between the interests or positions of any of the individual PCDA Defendants with one another. ....................................................................................... 3

      A.   Plaintiff fails to demonstrate that there is any alleged conflict of interest created solely due to the fact that some of the individual PCDA Defendants were supervisors and some were non-supervisors. ............................................................................................................ 3

      B.   The fact that plaintiff must prove his *Monell* claims to establish municipal liability also does not create a conflict of interest among supervisor and non-supervisor individual defendants. ............................................................................................................................ 5

      C.   Plaintiff's claim that his allegations against Investigator Cilento require him to be assigned separate counsel is equally without any merit. ........................................................ 6

      D.   The possibility that the individual PCDA Defendants may have differing knowledge, participation, and culpability for alleged misconduct is not evidence of an actual conflict of interest, let alone a basis for disqualification. ...................................................................... 7

CONCLUSION............................................................................................................................ 8

# **TABLE OF AUTHORITIES**

**Cases**

*Akagi v. Turin Hous. Dev. Fund Co.*, No. 13-CV-5258 (KPF), 2017 WL 1076345 (S.D.N.Y. Mar. 22, 2017) ................................................................................................................ 8

*All Star Carts and Vehicles, Inc. v. BFI Canada Income Fund*, No. 08-CV-1816 (LDW) (AKT), 2010 WL 2243351 (E.D.N.Y. June 1, 2010) ................................................................. 4

*Anderson v. Cahill*, 417 F. App'x 92 (2d Cir. 2011) ..................................................................... 3

*Cadie Co. v. Damadeo*, 256 F. Supp. 2d 155 (E.D.N.Y. 2003) ..................................................... 7

*Colandrea v. Town of Orangetown*, 490 F. Supp. 2d 342 (S.D.N.Y. 2007) .................................. 6

*Craig v. City of New York*, No.: 1:20-CV-02152 (LDH) (PK), 2022 WL 2238451 (E.D.N.Y. June 22, 2022) ............................................................................................................................ 7

*Drag Racing Technologies, Inc. as D.R.T., Inc. v. Universal City*, No. 02-CV-0958 (BSJ) (JCF), 2003 WL 1948798 (S.D.N.Y. Apr. 24, 2003) .................................................................... 4

*Dunton v. County of Suffolk*, 729 F.2d 903 (2d Cir. 1984) ........................................................... 5

*Evans v. Artek Sys. Corp.*, 715 F.2d 788 (2d Cir. 1983) ................................................................ 4

*Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246 (2d Cir. 2001) ..................................... 6

*Lebetkin v. Giray*, No. 18-CV-8170 (DLC), 2018 WL 6582800 (S.D.N.Y. Nov. 20, 2018) ......... 5

*Murray v. Metropolitan Life Ins. Co.*, 583 F.3d 173 (2d Cir. 2009) .............................................. 4

*Patterson v. Balsamico*, 440 F.3d 104 (2d Cir. 2006) ............................................................... 3, 5

*Razzoli v. City of New York*, No. 16-CV-7136 (LGS) (JLC), 2021 WL 162029 (S.D.N.Y. Jan. 19, 2021) ........................................................................................................................... 5, 7

*Rodick v. City of Schenectady*, 1 F.3d 1341 (2d Cir. 1993) .......................................................... 5

*Tartaglia v. City of New York*, No. 98-CV-5584 (JGK) (RLE), 1999 WL 151104 (S.D.N.Y. Mar. 19, 1999) ............................................................................................................................ 4

*United States v. Prevezon Holdings Ltd.*, 839 F.3d 227 (2d Cir. 2016) ........................................ 4

*Zhang v. Weseley*, No. 23-CV-00014 (ALC), 2024 WL 1134596 (S.D.N.Y. Mar. 15, 2024) ... 4, 5

**PRELIMINARY STATEMENT**

As will be discussed in detail below, plaintiff's speculative, conclusory-filled motion should be denied in its entirety because it fails to meet the high standard applicable to motions to disqualify opposing counsel. It is well settled that disqualification cannot be based on hypothetical legal positions that counsel imagines that an adverse party may one day seek to assert. This principle alone precludes the vast majority of plaintiff's arguments. Furthermore, the fact that plaintiff has sued both supervisory and non-supervisory defendants – which happens in virtually every § 1983 action – does not somehow demonstrate a conflict of interest that precludes concurrent representation.

**RELEVANT FACTUAL BACKGROUND**

As an initial matter, the allegations in plaintiff's Complaint against each of the individual PCDA Defendants vary widely and seemingly occurred at various points in time. Specifically, the allegations range from the time that the victim, Josette Wright, went missing on October 3, 1994, all the way through the conclusion of plaintiff's second criminal trial on February 27, 2023. *See* Exhibit A of the Declaration of Kenneth E. Pitcoff in Opposition ("Decl. in Opp."), at ¶¶ 49-77, 81-82, 277. To be exact, plaintiff's allegations range over a twenty-eight-year period and span three decades. *Id.* It should be noted that plaintiff's allegations against each of the individual PCDA Defendants are also substantially different and distinct, which only further undermines any notion that their interests are presently adverse.

For example, plaintiff's allegations against former DA Wright are limited to his claimed involvement with plaintiff's arrest and his first criminal prosecution in 1996-97. Ex. A, at ¶¶ 57-62. None of the other individually named PCDA Defendants were employed under former DA Wright at that time. *Id.* Chief Assistant District Attorney James Rooney, not DA Wright,

1

presented the criminal case against plaintiff to the Grand Jury, appeared for the pre-trial suppression hearings, and served as the trial prosecutor for plaintiff's first criminal trial. *See* Exhibit B of the Decl. in Opp.

Additionally, by failing to claim that there is a conflict of interest with the concurrent representation of former ADA York, plaintiff concedes that there is no actual conflict. Even if former ADA York had been directly addressed in plaintiff's motion papers, he was the Chief ADA in 2012 and served as the trial prosecutor in plaintiff's criminal codefendant Anthony DiPippo's first retrial. Ex. A, at ¶ 75. While plaintiff's claim that there was an alleged conspiracy between former ADA York and DA Tendy and/or former ADA Glasser, this claim is entirely meritless. Judge Robert Prisco, the trial judge that oversaw plaintiff's second criminal trial, stated on the record that York was an old colleague and the only discussion that they had even remotely related to plaintiff's criminal case was the Court of Appeals decision in DiPippo's appeal of his second conviction, which concerned the legal issue of the admissibility of third-party culpability evidence. Exhibit C of the Decl. in Opp, at p. 3. In other words, this was about a legal issue that had nothing to do with plaintiff's ongoing criminal case. *Id.*

With respect to the remaining individual PCDA Defendants, plaintiff incorrectly alleges that ADA Chana Krauss was involved in the prosecution of plaintiff, including his second criminal trial. Ex. A, at ¶¶68-74. This allegation is completely unfounded because as plaintiff's counsel is well aware – as they served as plaintiff's criminal defense counsel during his subsequent retrial – ADA Krauss was not the prosecutor responsible for prosecuting plaintiff's criminal case. DA Tendy and former ADA Glasser were the trial prosecutors during plaintiff's criminal re-trial. Ex. A, at ¶¶ 54, 66. Meanwhile, the conclusory allegations against Investigator Cilento relate to allegedly withholding exculpatory evidence and intimidating witnesses, together with DA Tendy

and former ADA Glasser. Ex. A, at ¶¶ 76-77. Lastly, plaintiff purportedly claims that DA Tendy, ADA Krauss, and former ADA Glasser were all policymakers and decisionmakers for the DA's office during the relevant time of plaintiff's second prosecution. Ex. A, at ¶¶ 49, 64, 68.

## ARGUMENT

**I. There are no actual conflicts between the interests or positions of any of the individual PCDA Defendants with one another.**

**A. Plaintiff fails to demonstrate that there is any alleged conflict of interest created solely due to the fact that some of the individual PCDA Defendants were supervisors and some were non-supervisors.**

Plaintiff's motion papers are devoid of any evidence establishing that there are any existing conflict-of-interest issues present due to the concurrent representation of the individual PCDA Defendants by a single firm. In his motion papers, plaintiff claims that there is a potential for a conflict of interest simply because DA Tendy and former DA Wright were supervisors, and DA Tendy directly supervised Glasser, Krauss, and Cilento. *See* Plaintiff's Memorandum of Law ("Plaintiff's MOL"), at pp. 20-21. Accordingly, plaintiff contends that seemingly based on DA Tendy's role as a supervisor of Glasser, Krauss, and Cilento, there are purported potential incentives that could direct their interests and place these particular defendants "at odds", which requires the disqualification of MDAFP. *Id.* at p. 21. Yet, this argument – which, if adopted, would warrant the disqualification of defense counsel in every case where supervisors have been sued – is insufficient to satisfy plaintiff's initial burden, much less disqualify counsel.

With respect to civil cases, a conflict arises only where "counsel actively represented conflicting interests and … an actual conflict of interest adversely affected [that counsel's] performance during trial." *Anderson v. Cahill*, 417 F. App'x 92, 93 (2d Cir. 2011) (summary order) (quoting *Patterson v. Balsamico*, 440 F.3d 104, 115 (2d Cir. 2006)) (internal quotation marks omitted). It is well settled in the Second Circuit that "disqualification is called for only

3

where 'an attorney's conduct tends to taint the underlying trial.'" *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 241 (2d Cir. 2016) (citation omitted). "The Second Circuit disfavors disqualification and therefore requires the party seeking disqualification to satisfy a 'high standard of proof' in order to succeed." *All Star Carts and Vehicles, Inc. v. BFI Canada Income Fund*, No. 08-CV-1816 (LDW) (AKT), 2010 WL 2243351, at *4 (E.D.N.Y. June 1, 2010) (citing *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)) (citations omitted). Thus, the party seeking to disqualify opposing counsel "bears the burden of demonstrating specifically how and as to what issues in the case the prejudice may occur, and that the likelihood of prejudice occurring … is substantial." *Zhang v. Weseley*, No. 23-CV-00014 (ALC), 2024 WL 1134596, at *2 (S.D.N.Y. Mar. 15, 2024) (quoting *Murray v. Metropolitan Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009)) (internal citation omitted). The mere "possibility that future conflicts of interest may arise does not require" disqualification. *Drag Racing Technologies, Inc. as D.R.T., Inc. v. Universal City*, No. 02-CV-0958 (BSJ) (JCF), 2003 WL 1948798, at *4 (S.D.N.Y. Apr. 24, 2003) (citing *Tartaglia v. City of New York*, No. 98-CV-5584 (JGK) (RLE), 1999 WL 151104, at *2 (S.D.N.Y. Mar. 19, 1999)).

     Here, plaintiff cannot meet this high burden as his motion papers fail to demonstrate that any conflict of interest actually exists. Plaintiff points to the roles as supervisors compared to non-supervisors as support for his argument that a conflict of interest is somehow present. Yet, in the absence of any evidence, plaintiff's claim that potential incentives exist for the individual PCDA Defendant supervisors to distance themselves from the acts of the non-supervisory defendants and to deny involvement applies to virtually any concurrent representation in federal civil rights litigation and fails to satisfy the high burden required on a motion to disqualify. *See Zhang*, 2024 WL 1134596, at *2-3 (denying plaintiff's motion to disqualify defendants' counsel because

plaintiff's motion was "plainly insufficient" as she proffered "no factual allegations or evidence at all"); *see also Razzoli v. City of New York*, No. 16-CV-7136 (LGS) (JLC), 2021 WL 162029, at *2 (S.D.N.Y. Jan. 19, 2021) (observing that opposing counsel's "premature speculation" falls well short of the showing required to disqualify counsel) (citing *Lebetkin v. Giray*, No. 18-CV-8170 (DLC), 2018 WL 6582800, at *1 (S.D.N.Y. Nov. 20, 2018)).

**B. The fact that plaintiff must prove his *Monell* claims to establish municipal liability also does not create a conflict of interest among supervisor and non-supervisor individual defendants.**

In the context of alleged conflicts of interest arising from the concurrent representation of individual and municipal defendants, such cases are analyzed on a case-by-case basis. *See Patterson*, 440 F.3d at 114. The Second Circuit has held that a conflict of interest exists where an attorney representing both a municipal entity and an individual defendant advanced the argument that the individual was acting outside the scope of his employment, undermining the individual's qualified immunity defense while insulating the municipality from *Monell* liability. *See Dunton v. County of Suffolk*, 729 F.2d 903, 905-908 (2d Cir. 1984). However, the Second Circuit has declined to extend this holding to cases in which the positions advanced by the municipal and the individual defendants are consistent with one another. *See Patterson*, 440 F.3d at 114-116; *see also Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (holding that *Dunton* was distinguishable from the case at bar because "both the City and the officers argued that the officers were acting in their official capacity. Furthermore, the officers concede that their trial counsel advanced and argued all possible defenses available to them, including the qualified immunity defense…").

In the case at bar, the individual PCDA Defendants and codefendant Putnam County are already represented by two different law firms, MDAFP and Silverman & Associates. In addition,

5

the individual PCDA Defendants' positions are entirely consistent with each other as they expressly deny and refute all of plaintiff's allegations against them. In short, none of the individual PCDA Defendants believe that s/he committed any wrongdoing in connection with this matter. It is also each individual PCDA Defendant's position that s/he is entitled to absolute immunity as prosecutors and a prosecutorial investigator, or at the very least, s/he is entitled to qualified immunity. This is further evidenced by the fact that prior to the filing of plaintiff's instant motion papers, the individual PCDA Defendants had filed a motion to dismiss plaintiff's Complaint on these very grounds. The fact that plaintiff decided to set forth *Monell* claims seeking municipal liability against Putnam County and that he must prove these claims does not create a conflict of interest for the individual PCDA Defendants.

**C. Plaintiff's claim that his allegations against Investigator Cilento require him to be assigned separate counsel is equally without any merit.**

Without citing to any case law at all, plaintiff alleges that since some of his allegations against Investigator Cilento claim that he engaged in several acts of alleged misconduct, including participating with DA Tendy in order to intimidate witnesses and suppress exculpatory evidence, that this requires that he should be represented by separate counsel. Plaintiff's MOL, at p. 21. In support of this argument, plaintiff claims that Investigator Cilento could have "[a] viable defense" if he were to blame any wrongdoing on DA Tendy. *Id.* However, because liability in § 1983 cases is personal in nature, Investigator Cilento could only be held liable for acts in which he personally participated in and "blaming the District Attorney" is not a defense to liability for those acts. *See Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001) (explaining personal involvement requirement in § 1983 cases); *see also Colandrea v. Town of Orangetown*, 490 F. Supp. 2d 342, 352-53 (S.D.N.Y. 2007) (denying motion to disqualify defense based on plaintiff's speculation that defendant would one day bring malpractice claims against defense counsel).

6

Consequently, the proffered "defense" proposed by plaintiff's counsel is not a defense at all. Courts have repeatedly rejected motions to disqualify based on similarly conclusory allegations made by opposing counsel. *See Razzoli*, 2021 WL 162029, at *2; *see also Craig v. City of New York*, No.: 1:20-CV-02152 (LDH) (PK), 2022 WL 2238451, at *7 (E.D.N.Y. June 22, 2022) ("Absent concrete allegations or an ongoing investigation, merely raising the possibility that wrongdoing could be uncovered does not create a conflict"); *Cadie Co. v. Damadeo*, 256 F. Supp. 2d 155, 157 (E.D.N.Y. 2003) (denying motion to disqualify where movant merely provided conclusory allegations as evidence of conflict of interest). Therefore, plaintiff's motion to disqualify should similarly be denied on this ground.

### D. The possibility that the individual PCDA Defendants may have differing knowledge, participation, and culpability for alleged misconduct is not evidence of an actual conflict of interest, let alone a basis for disqualification.

Next, plaintiff argues that due to his claims that the PCDA Defendants repeatedly violated court orders by suppressing evidence favorable to him that they were required to disclose, and these individual defendants had differing roles in, knowledge of, and culpability of these various acts of misconduct, counsel representing them all together cannot mount such particularized defenses without regard to the effect on the other individual defendants. *See* Plaintiff's MOL, at p. 22. This argument is again misplaced.

Here, there is no evidence that the individual PCDA Defendants' alleged misconduct with respect to purportedly violating court orders equates to a conflict of interest precluding concurrent representation. Because liability in § 1983 cases is personal to each defendant, a defendant who was not personally involved in an alleged constitutional tort simply is not liable for that tort. There is no conflict of interest in arguing that a defendant cannot be held liable for conduct in which they did not participate. Accordingly, the differences in each individual PCDA Defendants' roles and

7

knowledge further diminishes the potential of any conflict of interest as the parties proceed in litigation. Specifically, as discussed in detail above, DA Tendy and former ADA Glasser were the trial prosecutors who prosecuted plaintiff during his subsequent criminal re-trial, whereas ADA Krauss was not assigned to plaintiff's prosecution at all. Investigator Cilento helped prepare the case for trial. Former DA Wright's alleged involvement is limited to approximately 1996-97. Moreover, former ADA York's alleged involvement is even more limited to a lone, unrelated conversation with his former colleague, Judge Prisco.

In sum, the substantially different roles, involvement, and knowledge of each individual PCDA Defendant demonstrates that there is no existing conflict of interest and certainly that there is not any discernible risk of tainting an underlying trial in this matter.

In any event, counsel for the individual PCDA Defendants previously advised the Court and all parties that upon speaking with each individual PCDA Defendant, there was no indication at this juncture that any of the individual PCDA defendants (all but one of whom are attorneys) anticipate that they would be offering conflicting defenses or testimony, or testimony to support a purported *Monell* claim. Accordingly, each individual PCDA Defendant did not have any objection to our firm representing them all concurrently in this matter.[1]

## **CONCLUSION**

In light of the foregoing, it is respectfully submitted that this Court should deny plaintiff's motion to disqualify in its entirety.

---

[1] In the event that it is required by the Court, the individual PCDA Defendants are prepared to obtain and provide formal written conflict of interest waivers. *See Akagi v. Turin Hous. Dev. Fund Co.*, No. 13-CV-5258 (KPF), 2017 WL 1076345, at *15 (S.D.N.Y. Mar. 22, 2017) (holding that "clients can waive or cure their attorney's concurrent-representation conflicts by giving informed written consent").

8

Dated: July 24, 2024
    New York, New York

                             Respectfully submitted,

                             MORRIS DUFFY ALONSO FALEY & PITCOFF

By:   **_s/ Kenneth E. Pitcoff_**
       KENNETH E. PITCOFF
       FRANK H. FOSTER
       *Attorneys for Defendants*
       DA ROBERT V. TENDY, DA KEVIN WRIGHT, ADA LARRY GLASSER, ADA CHANA KRAUSS, ADA CHRISTOPHER YORK, and DA Inv. RALPH CILENTO
       101 Greenwich Street, 22nd Floor
       New York, New York 10006
       Tel.: (212) 766.1888
       Fax: (212) 766.3252
       Email: kpitcoff@mdafny.com; ffoster@mdafny.com

TO:   **All Counsel of Record via ECF**

      **Via U.S. Mail**
      Denise Rose
      1765 Kingston Street
      Titusville, FL 32780