UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ANDREW KRIVAK, JR.,

               Plaintiff,                             Docket No. 23-cv-6960 (KMK)

       -against-

PUTNAM COUNTY; Putnam County Sheriff's Department
Sheriff ROBERT THOUBBORON, in his individual capacity;
Putnam County Sheriff's Department Officers HAROLD
TURNER, DANIEL STEPHENS, PATRICK CASTALDO,
WILLIAM QUICK, JOHN DANIEL REES, WILLIAM
ASHER in their individual capacities; Putnam County District
Attorneys ROBERT V. TENDY and KEVIN WRIGHT, in
their individual capacities; Putnam County Assistant District
Attorneys LARRY GLASSER; CHANA KRAUSS; and
CHRISTOPHER YORK, in their individual capacities;
District Attorney Investigator RALPH CILENTO in his
individual capacity; and DENISE ROSE,

               Defendants.

------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION
## TO PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL

**PORTALE RANDAZZO LLP**
*Attorneys for Defendants Robert*
*Thoubboron, Harold Turner, Daniel*
*Stephens, Patrick Castaldo, William Quick,*
*John Daniel Rees and William Asher*
245 Main Street, Suite 605
White Plains, New York 10601
(914) 359-2400

By:    James A. Randazzo
        Drew W. Sumner

## TABLE OF CONTENTS

PRELIMINARY STATEMENT                                                          1

PROCEDURAL AND FACTUAL BACKGROUND                          1

LEGAL STANDARD                                                                     3

ARGUMENT                                                                              5

      I.      THIS FIRM'S CONCURRENT REPRESENTATION
             OF PUTNAM COUNTY, IN OTHER MATTERS,
             AND THE PCSD DEFENDANTS DOES NOT REQUIRE
             DISQUALIFICATION OF THIS FIRM AS COUNSEL
             TO THE PCSD DEFENDANTS                                      5

      II.     THIS FIRM'S SUCCESSIVE REPRESENTATION OF
             THE COUNTY, PCSD DEFENDANTS, AND
             DEFENDANTS GLASSER AND YORK
             DOES NOT REQUIRE DISQUALIFICATION OF THIS
             FIRM AS COUNSEL TO THE PCSD DEFENDANTS           11

      III.    PURPORTED DIFFERING INTERESTS OF THE PCSD
             DEFENDANTS DOES NOT REQUIRE DISQUALIFICATION
             OF THIS FIRM AS COUNSEL TO THE PCSD DEFENDANTS   12

CONCLUSION                                                                          15

# TABLE OF AUTHORITIES

**CASES**

*Benevida Foods, LLC v. Advance Magainze Publrs., Inc.*, 2016 U.S. Dist. LEXIS 81186
(S.D.N.Y. 2016) ................................................................................................ 12

*Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976) ........................................ 4

*Clark v. Bank of N.Y.*, 801 F. Supp. 1182, 1197 (S.D.N.Y. 1992) ................................................ 4

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995) .................................................................... 12, 13

*Dunton v. County of Suffolk*, 729 F.2d 903, 907 (2d Cir. 1984) .................................................... 11

*Evans v. Artek Sys. Corp.*, 715 F.3d 788, 791 (2d Cir. 1983) ........................................................ 4

*Freedman v. Rakosi*, 674 F. Supp. 3d 105 (S.D.N.Y. 2023) ........................................................ 12

*GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010) ......... 3, 5

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005) ............... 4

*Nisselson v. Empyrean Inv. Fund, LP (In re MarketXT Holdings Corp.)*, 2005 Bankr. LEXIS
3628 (Bankr. S.D.N.Y. 2005) ........................................................................... 12

*Papyrus Tech. Corp. v. N.Y. Stock Exch., Inc.*, 325 F. Supp. 2d 270, 276 (S.D.N.Y. 2004) .......... 3

*Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 388 (S.D.N.Y. 2010) 3

*Savarese v. City of New York*, 547 F. Supp. 3d 305, 353-354 (S.D.N.Y. 2021) .......................... 13

*Streichert v. Town of Chester*, No. 19-cv-7133 (KMK), 2021 U.S. Dist. LEXIS 35468 at *11
(S.D.N.Y. Feb. 25, 2021) ................................................................................... 3

*Tangreti v. Bachman*, 983 F.3d 609 (2d Cir. 2020) .......................................................... 7, 12, 13

*Zalewski v. Shelroc Homes, LLC*, 856 F. Supp. 2d 426 (N.D.N.Y. 2012); *Fierro v. Gallucci*,
2007 U.S. Dist. LEXIS 89286 (E.D.N.Y. 2007) .................................................. 12

## PRELIMINARY STATEMENT

Plaintiff Andrew Krivak brings this motion to disqualify each set of defense counsel of record that have appeared in this action upon purported "multiple conflicts of interests" in the attorneys' "successive and concurrent representations" of the defendants in this action. Plaintiff alleges that defense counsel's representation of their clients in this action run afoul of New York Rules of Professional Conduct 1.7 and 1.9. Specifically, Plaintiff asserts that this firm, Portale Randazzo LLP and the undersigned attorneys, be disqualified from representing Defendants Robert Thoubboron, Harold Turner, Daniel Stephens, Patrick Castaldo, William Quick, John Daniel Rees and William Asher (the "PCSD Defendants"). For the reasons addressed herein, Plaintiff's motion should be denied and the PCSD Defendants should be allowed to continue litigating this matter with their preference of defense counsel, Portale Randazzo LLP and the undersigned attorneys.

## PROCEDURAL AND FACTUAL BACKGROUND

This firm currently represents the PCSD Defendants in this action. Earlier in this litigation, this firm also represented Putnam County (the "County") and individual defendants Robert V. Tendy, Kevin Wright, Larry Glasser, Chana Krauss, Christopher York, and Ralph Cilento (the "PCDA Defendants"). Robert V. Tendy is presently the Putnam County District Attorney and was the lead prosecutor during Plaintiff's 2023 criminal trial. *See* Randazzo Declaration[1], Exh. "A," Compl. at ¶¶ 49, 53. Kevin Wright previously served as Putnam County District Attorney from 1992 through 2007, including during the initial investigation of Josette Wright's disappearance and, later, murder, as well as Plaintiff's first criminal trial. *See id.* at ¶¶ 57. 59. Larry Glasser

---

[1] All citations are to the Declaration of James A. Randazzo submitted contemporaneously herewith unless otherwise stated.

previously served as a First Assistant District Attorney in the Putnam County District Attorney's Office ("PCDAO") and participated in prosecuting Plaintiff during his criminal trial in 2023. *See id.* at ¶¶ 63-64, 66. Chana Krauss is presently employed as Chief Assistant District Attorney in the PCDAO and allegedly participated in a joint investigation of the Josette Wright case between the PCDAO and the New York Office of Attorney General in or about 2014. *See id.* at ¶¶ 69-70. Christopher York was previously the Chief Assistant District Attorney in the PCDAO and prosecuted Anthony DiPippo during his second criminal trial in 2012. *See id.* at ¶ 75. Ralph Cilento is employed by the PCDAO as an investigator and participated in Plaintiff's prosecution, including his 2023 trial. *See id.* at ¶ 76. On April 10, 2024, Lewis Silverman, Esq. and Deanna Collins, Esq., of Silverman & Associates substituted and appeared as counsel to Putnam County. *See* Exh. "B." On April 30, 2024, Frank Foster, Esq. of Morris Duffy Alonso Faley & Pitcoff LLP substituted and appeared as counsel to the PCDA Defendants. *See* Exh. "C."

This firm also represented all defendants, Putnam County, Robert Thoubboron, Dan Stephens, Patrick Castaldo, Bill Quick, and Victor Nestor, in *DiPippo v. County of Putnam, et al.*, 17-cv-7948 (NSR). During discovery, this firm represented John Daniel Rees, Larry Glasser, and Christopher York during their non-party depositions noticed by DiPippo's counsel. As Plaintiff admits, DiPippo's claims in the 2017 litigation are similar to those alleged by Plaintiff here, *i.e.*, § 1983 claims of malicious prosecution, deprivations of due process by denial of a fair trial, civil rights conspiracy, and *Monell*, along with related claims for failure to intervene and supervisory liability. Plaintiff and DiPippo also brought similar claims under state law for malicious prosecution and alleged that Putnam County is vicariously liable for the actions of its employees acting within the scope of their employment.

As the Court has previously been advised by defense counsel, each Defendant will knowingly and intelligently execute a conflict waiver, should the Court deem so appropriate in this instance, waiving any conflicts, or potential conflicts, in this firm's representation of the PCSD Defendants. *See* Exh. "D," Dkt. Entry No. 99 ("the County…consents to the continued representation of Portale Randazzo LLP"); Dkt. Entry No. 103 ("it is the PCDA Defendants' position that no conflict – actual, implied, or otherwise – exists with Portale Randazzo or any of its attorneys, that would prevent those attorneys from staying on as counsel for the PCSD defendants. In sum, each individual PCDA Defendant does not have any objection to Portale Randazzo's continued representation of the PCSD Defendants.").

## LEGAL STANDARD

Motions to disqualify counsel in this District are generally "disfavored and subject to a high standard of proof, in part because they can be used tactically as leverage in litigation." *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 388 (S.D.N.Y. 2010). "Although the American Bar Association ('ABA') and state disciplinary codes provide valuable guidance, a violation of those rules may not warrant disqualification. Instead, disqualification is warranted only if 'an attorney's conduct tends to taint the underlying trial.'" *GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010). As Your Honor noted, "[t]he Court's role, therefore, is not to police each and every violation of professional rules, but rather to ensure that the proceeding before it is free from taint." *Streichert v. Town of Chester*, No. 19-cv-7133 (KMK), 2021 U.S. Dist. LEXIS 35468 at *11 (S.D.N.Y. Feb. 25, 2021). The Court, when considering a disqualification motion, should take a "restrained approach that focuses primarily on persevering the integrity of the trial process." *Papyrus Tech. Corp. v. N.Y. Stock Exch., Inc.*, 325 F. Supp. 2d 270, 276 (S.D.N.Y. 2004). The Court must also "balance 'a client's

right freely to choose his counsel' against 'the need to maintain the highest standards of the profession." *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005). Moreover, "the party seeking disqualification must carry a 'heavy burden' and must meet a 'high standard of proof' before a lawyer is disqualified." *Clark v. Bank of N.Y.*, 801 F. Supp. 1182, 1197 (S.D.N.Y. 1992). Mere speculation and the mere appearance of impropriety are insufficient to meet this high standard. *See Streichert, supra.* at *12.

Plaintiffs here allege that this firm must be disqualified due to conflicts in concurrent and successive representation of various Defendants. The Second Circuit has held that in cases involving conflicts related to successive representation, disqualification may be warranted when: "(1) the moving party is a former client of the adverse party's counsel; (2) there is substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client." *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983). By virtue of these factors, disqualification of this firm is inappropriate because Plaintiff, the moving party, has never been a client of this firm.

Another basis upon which Plaintiff alleges conflict, the concurrent representation by this firm of the PCSD Defendants and the County in other matters, also is insufficient to warrant disqualification. "One established ground for disqualification is concurrent representation, an attorney's simultaneous representation of one existing client in a matter adverse to another existing client." *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976). "The lawyer who would sue his own client, asserting in justification the lack of 'substantial relationship' between the litigation and the work he has undertaken to perform for that client, is leaning on a slender reed

4

indeed." *Id.* at 1386. This scenario is not present under the facts of this matter. The PCSD Defendants do not have claims against the County, who this firm represents in other unrelated matters. In fact, there are no crossclaims alleged in this litigation at all. Thus, this firm is not in the conflicted position of bringing claims by one client against another existing client, and there is no basis for disqualifying this firm from representing the PCSD Defendants due to our representation of the County in unrelated matters.

**ARGUMENT**

I.  **THIS FIRM'S CONCURRENT REPRESENTATION OF PUTNAM COUNTY, IN OTHER MATTERS, AND THE PCSD DEFENDANTS DOES NOT REQUIRE DISQUALIFICATION OF THIS FIRM AS COUNSEL TO THE PCSD DEFENDANTS**

As set forth above, concurrent representation by a firm, or attorney, of two parties adverse to one another may give rise to a conflict warranting disqualification, *i.e.*, when an attorney represents one party who sues another concurrent client of the attorney. This is not the situation presented here and disqualification is not warranted on these grounds. Illustrating this point, Plaintiff rests its argument for disqualification, in part, on *GSI Commerce Solutions, Inc.*, *supra.*, however, Judge Rakoff in disqualifying counsel, and the Second Circuit in affirming the underlying decision, related to concerns not at issue in the present litigation. There, "Baby Center LLC, a wholly-owned subsidiary of Johnson & Johnson, Inc., [sought] to disqualify Blank Rome, LLP, as GSI's counsel…[and] the court concluded that the doctrine forbidding concurrent representation without consent applies because the relationship between BabyCenter and J&J, which Blank Rome represents in other matters, is so close that the two are essentially one client for disqualification purposes." *Id.* at 206. As such, Blank Rome's conflict arose from concurrent representation of GSI, the Plaintiff in that action, and J&J, Defendant BabyCenter's parent company, in other actions. This matter does not present similarly, this firm clearly does not

5

represent the Plaintiff, an individual, and while it represents the PCSD Defendants, and has represented other named Defendants in prior actions, as well as the County in other past and pending actions, each Defendant in this action consents to this firm's continuing representation of the PCSD Defendants. As such, the burden on this firm is not as set forth in *GSI*, and as Plaintiff asserts, related to concurrent representation of one existing client in a matter adverse to another existing, "a burden so heavy that it will rarely be met" because the PCSD Defendants are not adverse to any other existing clients of the firm, including Putnam County.

Plaintiff attempts to paint Putnam County and the PCSD Defendants as adverse, and cites several examples, none of which actually demonstrate adverse interests or conflicts between the PCSD Defendants and Putnam County, let alone conflicts that cannot be waived with consent of the PCSD Defendants and Putnam County. First, Plaintiff purports that the PCSD Defendants, while represented by the firm, would be precluded from "employ[ing] a defense strategy that shifts blame from the individual PCSD Defendants to the County, including that which would place the blame on the County's failure to train or supervise that led to Krivak's wrongful investigation, prosecution or conviction." *See* Pltf's Mem. of Law at p. 13. This argument is unavailing and misstates the standard for liability under § 1983. The PCSD Defendants cannot avoid liability by "shift[ing] blame" to the County for its alleged failure to train or supervise. If Plaintiff successfully proves its claim that the PCSD Defendants individually violated Plaintiff's civil rights, any argument that the County failed to train or supervise would not absolve the individuals of their liability to Plaintiff for violating his rights. Instead, the failure to train and supervise relates to Plaintiff's separate *Monell* claim against the County, which could succeed or fail if the individuals violated Plaintiff's rights. Obviously, if there is no underlying violation of Plaintiff's rights, then his *Monell* claim against the County would be dismissed. Such an argument simply does not

advance the PCSD Defendants' interests, it does not "shield Castaldo and other non-supervisory defendants from liability, or mitigate their culpability…" (*see id.* at p. 14) and is not grounds for conflict in this firm's representation of the PCSD Defendants and its representation of the County in other matters, unrelated to this litigation.

No conflict exists between the non-supervisory PCSD Defendants (Quick, Castaldo, Rees, Asher) and the supervisory defendants (Thoubboron, Turner, and Stephens) because "after *Iqbal,* there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachman*, 983 F.3d 609, 618 (2d Cir. 2020).

Similarly, no conflict exists between the PCSD Defendants and the PCDA Defendants as alleged by Plaintiff related to Castaldo, Quick, or Turner's testimony in *DiPippo*. *See* Pltf's Mem. of Law at 12-13. Review of Plaintiff's cited testimony from Castaldo's deposition *DiPippo* that purportedly established "Wright's involvement in the Krivak investigation and knowledge of exculpatory information" is simply unsupported by the cited testimony. Castaldo testified that he called Denise Rose in for an interview because he "had a feeling she might have known more" about Wright's murder. *See* Exh. "E" at 476:3-9. DiPippo's counsel asked a series of questions regarding Castaldo advising Rose of her Miranda rights and the timing of same. *See id.* at 476:10-477:10. Counsel asked Castaldo what happened when Rose entered the room to be interviewed and Castaldo simply responded that he told Quick to "find out what's going on with the district attorney." *Id.* at 477:13-15. Castaldo testified that he believed that Quick left the room. *See id.* at 482:22-483:2. This testimony doesn't support Plaintiff's assertion that Wright knew of exculpatory information or Wright's involvement in the investigation. Additionally, Plaintiff misrepresents Castaldo's testimony in stating that the "district attorney [was] notified about the tape by another

officer." *See* Pltf's Mem. of Law at 13. Castaldo clarified his testimony on the very same pages

cited by Plaintiff that he believed that the district attorney knew about the Oliveri recording, but

did not know when or who notified the district attorney about the recording. *See* Exh. "E" at

548:18-550:24. Further, Castaldo testified that he never listened to the tape himself. *See id.* This

testimony does not create a conflict between Wright and the PCSD Defendants.

Plaintiff also omits portions of Quick's testimony concerning then-District Attorney

Wright's desire to "run the investigation." *See* Pltf's Mem. of Law at 13. While Quick testified

that he, Wright, and others were present for a meeting that lasted approximately two hours and

concerned DA Wright's desire "to run the investigation," Quick testified that Wright "was told he

couldn't run the investigation." *See* Exh. "F" at 128:13-20.

Additionally, Plaintiff mischaracterizes Turner's testimony regarding a conversation with

Wright about their interpretations of physical evidence. *See* Pltf's Mem. of Law at 13. Turner

testified that he discussed marks on a ring that an eyewitness stated belonged to Josette Wright

with DA Wright. *See* Exh. "G" at 198:11-23, 199:8-10, 201:8-206:8. Turner explained that the

witness characterized the mark as a "bite mark" and Wright told Turner that, in Wright's opinion,

the marks were caused by sizing of the ring. Turner admitted that he also interpreted the marks as

a result of sizing of the ring, but simply maintained that the witness stated she recognized the ring

due to mark that the witness described to be a bite mark, and that Turner was not "putting words

in the witness' mouth." *Id.* at 201:23-202:3, 203:17-22. There is simply no support in the record

for Plaintiff's baseless assertion that Turner testified that "Wright sought to have Turner

misrepresent witness statements concerning evidence." *See* Pltf's Mem. of Law at 13. In fact, this

same issue was addressed in the PCDA's earlier motion to dismiss Plaintiff's Complaint, wherein

the absence of any conflict was demonstrated, and this firm advocated for Wright's entitlement to

absolute immunity:

> Plaintiff's sole allegation of DA Wright's involvement concerning
> the police investigation prior to Plaintiff's arrest, is the alleged
> "dispute" concerning the genesis of a marking found on a ring that
> the Duffy witnesses identified as belonging to Josette Wright
> because they recognized the mark to be allegedly caused by a dog
> bite. Plaintiff points to the deposition testimony of PCSD
> Investigator Harold Turner in connection with DiPippo's § 1983
> lawsuit to demonstrate this "dispute." However, as Turner's
> testimony demonstrates, the "dispute" arose in the course of DA
> Wright's marshaling of evidence. Turner testified, in sum and
> substance, that he and Wright both recognized that the mark on the
> ring was the result of sizing (i.e., cutting and soldering the ring),
> but that witnesses (Catherine and Tara Duffy) stated that they
> recognized the ring based upon the marking, which they,
> incorrectly in the minds of Turner and Wright, was caused by a dog
> bite. Specifically, Turner testified that "I could see it was a sizing
> mark, but I was saying [to DA Wright] how the girl identified her
> ring and it didn't change anything in her identification of the ring.
> Whatever made the mark, it was there. Whatever she thought was
> it she thought." *See* Randazzo Decl., Exh. "C" at 141:13-21.
>
> DA Wright's inquiry of Inv. Turner about the Duffys'
> identification of the ring is purely an advocative function; Wright
> was uninvolved in the gathering of said evidence. Instead, he
> sought additional information from Inv. Turner to prepare for the
> judicial process, including presentation to the grand jury. Further,
> Plaintiff admits that the genesis of the mark was not elicited from
> the witnesses during presentation to the grand jury. These facts fail
> to state a claim against DA Wright as he is shielded by absolute
> immunity.

*See* Exh. "H" at 21-22. Plaintiff's assertion that this firm cannot use this information to defend the

PSCD Defendants in this action is, therefore, literally correct, because the purported "information"

presented by Plaintiff is totally incorrect and misrepresents Castaldo, Quick, and Turner's

testimony to seemingly manufacture conflicts where none exist.

Plaintiff's argument that this firm's representation of the County in other matters presents

an unwaivable conflict "arising from [this firm's] professional and financial interest in maintaining

a good business relationship with the County" is similarly misplaced. To the extent that the PCSD Defendants testify about their training, or absence of training, the County may, through its counsel Silverman & Associates, present a defense by producing training histories, records, and curricula regarding the issues relevant to this litigation, including the Defendants' *Brady* obligations. The individual PCSD Defendants' memories, or absence of memories, of the training that they received some twenty-five plus years ago, in that instance, would not be nearly as probative of the training by the County as any training records and curricula. Further, as Plaintiffs allege, Turner and Castaldo have already presented testimony concerning their training and understanding of, inter alia., their *Brady* obligations during the *DiPippo* litigation. The County is thus well aware of the potential testimony concerning same in this litigation, and has been for years – it does not create any concern that this firm's zealous representation of the PCSD Defendants will be affected by this firm's representation of the County in other matters, or that this firm's interests will cause us to "refrain from any conduct to which the County might object." *See* Pltf's Mem. of Law at 14. Further, as the Court and Plaintiff's counsel are likely aware, this firm's representation of the County in this matter, similar to others, is, as colloquially referred, "insurance defense" that involves the County's insurance carrier. This firm's defense of the County in other actions, and the PCSD Defendants in this action, is not akin to the Worth Firm's representation of the PBA pursuant to a "ten-million-dollar contract." *See id.* at 11.

Plaintiff's motion to disqualify this firm on the basis of the identified "conflicts" related to its concurrent representation of the County, PCSD Defendants, and PCDA Defendants should be denied.

## II.    THIS FIRM'S SUCCESSIVE REPRESENTATION OF THE COUNTY, PCSD DEFENDANTS, AND DEFENDANTS GLASSER AND YORK DOES NOT REQUIRE DISQUALIFICATION OF THIS FIRM AS COUNSEL TO THE PCSD DEFENDANTS

Initially, it is not disputed that this action and the *DiPippo* litigation are substantially similar in that they arise, in part, from the same operative facts, the investigation and prosecution of Plaintiff and DiPippo for the rape and murder of Josette Wright, and similar § 1983 claims of civil rights violations. The § 1983 claims here, as in *DiPippo*, relate to malicious prosecution and denial of a fair trial, both through the fabrication of evidence and suppression of exculpatory evidence. However, Plaintiff cannot meet the threshold requirement – this firm has never represented Plaintiff, the moving party, and thus disqualification is unwarranted. Additionally, disqualification under *Dunton*, is equally unwarranted as no conflicts exist. The law on all points relevant to Plaintiff's claims of malicious prosecution and denial of a fair trial were clearly established at the time of Plaintiff and DiPippo's prosecution in 1995-1996, so any claims of qualified immunity against the specific allegations are simply not available to the PCSD Defendants, thus distinguishing this case from the hypothetical § 1983 matters referenced in *Dunton* where "[i]f [an individual defendant] is successful in asserting a good faith immunity defense, the municipality may be wholly liable because it cannot assert the good faith immunity of its employees as a defense." *Dunton v. County of Suffolk*, 729 F.2d 903, 907 (2d Cir. 1984).

Further, there is no possibility of the disclosure of confidential information by this firm from the County, Glasser, or York, as a result of our prior representation in *DiPippo*. Plaintiff speculates that our prior representation of the County in *DiPippo* informs us, impermissibly, of the County's "bottom line" in potential settlement of this matter, or settlement strategies generally. These are inapplicable here because the County's insurance carrier necessarily has conversations with counsel to each County representative regarding the claims at issue, the potential for liability,

11

assessment of potential damages, and settlement posture. Moreover, this is not a scenario wherein the PCSD Defendants would gain any advantage by understanding the settlement posture of the County or its insurance carrier, this is not a case where this firm represents a party with claims against the County as in cases cited by Plaintiff such as *Freedman v. Rakosi*, 674 F. Supp. 3d 105 (S.D.N.Y. 2023); *Benevida Foods, LLC v. Advance Magainze Publrs., Inc.*, 2016 U.S. Dist. LEXIS 81186 (S.D.N.Y. 2016); *Zalewski v. Shelroc Homes, LLC*, 856 F. Supp. 2d 426 (N.D.N.Y. 2012); *Fierro v. Gallucci*, 2007 U.S. Dist. LEXIS 89286 (E.D.N.Y. 2007); and *Nisselson v. Empyrean Inv. Fund, LP (In re MarketXT Holdings Corp.)*, 2005 Bankr. LEXIS 3628 (Bankr. S.D.N.Y. 2005). Rather, in those cases, disqualification was based upon the purportedly conflicted firm's representation of a party and its past representation, or consultation, with the adverse party in the litigation, often regarding the very subject matter of the issues in dispute. Applied in this scenario, the County could move to disqualify this firm if we represented Plaintiff Krivak in this action, based upon confidential information obtained through representation of the County in the *DiPippo* matter. Those cases are inapposite to the facts at bar and do not warrant disqualification of this firm in this context or this litigation.

### III.    PURPORTED DIFFERING INTERESTS OF THE PCSD DEFENDANTS DOES NOT REQUIRE DISQUALIFICATION OF THIS FIRM AS COUNSEL TO THE PCSD DEFENDANTS

Plaintiff asserts that conflicts between the supervisory PCSD Defendants, Thoubboron, Turner and Stephens, and the non-supervisory PCSD Defendants, Castaldo, Quick, Rees, and Asher, require disqualification of this firm. Plaintiff cites *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995) and other cases that are no longer the law in the Second Circuit after the Second Circuit's decision in *Tangreti v. Bachman, supra.*, in 2020. The Second Circuit in *Tangreti* held that the test for supervisory liability under § 1983, as articulated in *Colon*, is inapplicable after the Supreme

Court's decision in *Iqbal*. The Court specifically referenced the *Colon* factors for supervisory liability and held that,

> "We join these circuits in holding that after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the constitution. *Iqbal*, 556 U.S. at 676. 'The factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary. *Id.* The violation must be established against the supervisory official directly."

*Tangreti*, *supra.*, at 618. This Court has observed that, "[i]n so holding, the Second Circuit repudiated its earlier decision in *Colon v. Coughlin* that 'the personal involvement of a supervisory defendant may be show by evidence that:…(2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; or (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts.'" *Savarese v. City of New York*, 547 F. Supp. 3d 305, 353-354 (S.D.N.Y. 2021). Plaintiff's purported conflicts relating to supervisory liability must be disregarded as they are based on repudiated caselaw that is no longer applicable in the Second Circuit.

Plaintiff's speculative arguments concerning differing levels of knowledge, participation, and potentially culpability are similarly unpersuasive and are not grounds to disqualify this firm from continuing to represent the PCSD Defendants, especially if the Court determines that signed waivers are appropriate and are furnished by the PCSD Defendants. While it is true that Plaintiff alleges discrete facts against certain PCSD officers, the PCSD Defendants are not in position to point the finger and blame another officer for misconduct. Plaintiff alleges that Castaldo and Quick fabricated evidence by coercing Plaintiff to sign a written confession that he raped and murdered Josette Wright. *See* Exh. "A" at ¶ 209. Plaintiff also alleges that Defendant Stephens, in essence,

conducted a sham polygraph, or series of polygraphs, to coerce Plaintiff to confess to the crimes. *See id.* at ¶¶ 215-222. These factual allegations of particularized acts by each individual do not present a scenario where those individuals could point the finger at the other and allege that the other committed the constitutional violations. Further, Plaintiff brings claims that each individual is liable under § 1983 for failing to intervene, so even if an individual were to point the finger at another for violating Plaintiff's civil rights, that individual may not so easily avoid liability as they could be equally as liable for failing to intervene to prevent the violation of Plaintiff's rights.

As to Defendant Rees' alleged illegal searches of the vehicle, there is no Fourth Amendment claim in this case related to Rees illegally searching Plaintiff's van. As such, whether or not Rees was directed to search the van, and whether he knew or did not know about any warrant requirement, is immaterial to the claims at issue and does not create a conflict in this firm's representation of the PCSD Defendants.

As to Castaldo and the Oliveri recording, there is no conflict presented by Castaldo's testimony. As set forth above, Castaldo does not know how prosecutors came to possess the recording, but testified that at some point he believes that they clearly did, a fact easily assumed because DiPippo's lawyers questioned him about the tape and, as Plaintiff admits, was disclosed in 2016. There is no conflict based upon these facts and Plaintiff's pure speculation does not require disqualification of this firm.

Nor do the PCSD Defendants' alleged histories of misconduct or civil rights violations in other unrelated cases bear on potential conflicts in this firm's joint representation of the PCSD Defendants. The prior conduct of Castaldo and Stephens, specifically, do not establish that they violated Plaintiff's rights here, and Plaintiff must prove the individual involvement of each PCSD Defendant in violating Plaintiff's civil rights in order to prevail against that individual in the

14

present action. These facts do not raise a conflict among the PCSD Defendants, and even if it did

pose a conflict, the PCSD Defendants indicated that they will each sign conflict waivers and

proceed with counsel of their choice, specifically this firm and the undersigned attorneys.

## CONCLUSION

Based on the foregoing, Plaintiff's motion to disqualify this firm from continuing to

represent the PCSD Defendants should be denied in its entirety.

Dated: July 24, 2024
        White Plains, New York


                                    PORTALE RANDAZZO LLP



                                       /s/ James A. Randazzo
                                    James A. Randazzo
                                    Drew W. Sumner
                                    *Attorneys for Defendants Robert*
                                    *Thoubboron, Harold Turner, Daniel*
                                    *Stephens, Patrick Castaldo, William Quick,*
                                    *John Daniel Rees and William Asher*
                                    245 Main Street, Suite 605
                                    White Plains, New York 10601
                                    (914) 359-2400


To:     Counsel of record via ECF.


15