```
UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------X
ANTHONY DiPIPPO,


          Plaintiff,

                              Case Number
                              17-cv-7948(NSR)
          v.

COUNTY OF PUTNAM; Putnam County
Sheriff's Department Sheriff ROBERT
THOUBBORON in his individual capacity;
Putnam County Sheriff's Department
Investigators DAN STEPHENS, PATRICK
CASTALDO, BILL QUICK, and Putnam
County Sheriff's Department Officer
VICTOR NESTOR, in their individual
capacities,

          Defendants.
-----------------------------------------X
          August 1, 2019
          10:08 a.m.
```

        Videotaped Deposition of Defendant, PATRICK CASTALDO, taken by Plaintiff, pursuant to Notice, held at the offices of Neufeld Scheck & Brustin, LLP, 99 Hudson Street, Eighth Floor, New York, New York 10013, before CHARISSE ROMEO, a Registered Professional Reporter and Notary Public within and for the State of New York.



A P P E A R A N C E S:


NEUFELD SCHECK & BRUSTIN, LLP

Attorneys for Plaintiff

    99 Hudson Street, Eighth Floor

    New York, New York 10013

BY:   NICK BRUSTIN, ESQ.

    RICK SAWYER, ESQ.

    212-965-9081


PORTALE RANDAZZO LLP

Attorneys for Defendants

    245 Main Street

    White Plains, New York 10601

BY:   JAMES A. RANDAZZO, ESQ.

    DREW SUMNER, ESQ.

    914-359-2400

    jrandazzo@portalerandazzo.com


ALSO PRESENT:

NIKOLAS MANITARAS - Videographer

ANTHONY DiPIPPO

CLAIRE SHIMBERG - Legal Intern

TY PARKS - Paralegal



```
 1                    P. Castaldo
 2         A.   I didn't say conspiracy.
 3         Q.   All right.  Now, you
 4    called -- you said you called Denise
 5    Rose because you had a feeling, no
 6    evidence, just a feeling that maybe
 7    she knew more, correct?
 8         A.   I had a feeling she might
 9    have known more, sir.
10         Q.   Okay.  So then explain why
11    you Mirandized her when you started
12    interviewing her, if it was just a
13    feeling?
14         A.   No, that was after the
15    fact.  After she told me.  When she
16    banged her hand down and she said
17    they raped, they tied, they gagged,
18    and they dumped her in the woods, at
19    that point I didn't know if she was
20    part of it so I gave her her rights.
21         Q.   You understand that the
22    testimony, your prior testimony and
23    her testimony and the records
24    suggest you Mirandized her before
25    you spoke to her, do you understand
```



```
 1                    P. Castaldo
 2   that, right?
 3            MR. RANDAZZO:  Objection.
 4       A.   No, sir.  I believe it was
 5   afterwards.
 6       Q.   You didn't Mirandize her
 7   until after she came in --
 8            So what happened is she
 9   walked in the room and she started
10   spilling her guts?
11            MR. RANDAZZO:  Objection.
12       A.   No, she walked in the room,
13   we sat down.  I believe I told
14   Quick, I said, find out what's going
15   on with the district attorney.  I
16   said, Denise, I know what happened.
17   And right after I said that, she
18   turns around -- and this is not word
19   for word, mine isn't word for word.
20   I know what happened.  She banged,
21   she says they raped, they tied, they
22   gagged and they dumped her in the
23   woods.
24       Q.   Why isn't that documented
25   anywhere, by the way?
```



```
 1                    P. Castaldo
 2        A.   I believe it is the
 3   statement.
 4        Q.   Nope.
 5             MR. RANDAZZO:  Objection.
 6        Q.   First I ever heard that
 7   happening.
 8        A.   That's not documented
 9   anywhere, sir?
10        Q.   No.  There's a statement
11   that it says some other things, but
12   not that.
13             So she walked in -- and, by
14   the way, it sounds like you remember
15   this clear as day, right?
16        A.   Excuse me?
17        Q.   Sounds like you remember it
18   clear as day?
19        A.   That I remember her saying
20   that to me, yes, sir.
21        Q.   You said, I know what
22   happened.  What were you going to
23   say?
24        A.   I'm just throwing that out
25   to her.
```



```
 1                      P. Castaldo
 2        Q.   So the full sentence you
 3   got out, I know what happened?
 4        A.   I said, I know what
 5   happened to Josette Wright, Denise.
 6        Q.   And then she interrupted
 7   you?
 8        A.   Excuse me, sir?
 9        Q.   And she interrupted you?
10        A.   Yes.
11        Q.   What were you going to say?
12        A.   I wasn't going to say
13   anything.  I was just putting that
14   thought in your head.
15        Q.   Okay.  You said, I know
16   what happened to Josette Wright and
17   then she said --
18        A.   Bang.  (Indicating.)  They
19   raped, they tied, they gagged, and
20   they dumped her in the woods.
21        Q.   Let's take a look at the
22   April 24th statement.
23             MR. SAWYER:  That is
24        Exhibit 12.
25        Q.   Take a look at Exhibit 12,
```



```
 1                P. Castaldo
 2   page 19289.
 3           Are you there?
 4       A.  What's the page?
 5       Q.  19289.
 6       A.  Yes, sir.
 7       Q.  That's the beginning of the
 8   statement, right?
 9       A.  Yes, sir.
10       Q.  Now what the statement
11   says, the first thing you said to
12   her, "Denise, tell us in your own
13   words what happened on October 3rd,
14   1994."
15           That's different than what
16   you just said, right?
17       A.  This is after she stated to
18   me what happened, sir.
19       Q.  Ah, where's that written
20   down?
21       A.  That's not there, sir.
22       Q.  Oh, where's that?
23       A.  I just said it's not there.
24       Q.  Where is it?
25       A.  I'm just telling you what
```



```
 1                P. Castaldo
 2   she said to me.
 3         Q.   Why didn't you write it
 4   down?
 5         A.   I didn't write it down,
 6   sir.
 7         Q.   We keep having this
 8   communication problem.
 9              My -- I am suing you, Mr.
10   DiPippo is suing you for the reasons
11   why you did things.  You're doing it
12   because you were lying, because you
13   were making things up, for bad
14   purposes.  So all my questions are
15   why.
16              I know what you did, I know
17   it is not written here.  I want to
18   know why you didn't write it there?
19         A.   I didn't write it, sir.
20         Q.   I know.  But why?
21         A.   I don't have an answer for
22   that.
23         Q.   It sounds like a very
24   powerful admission.  You didn't say
25   anything, all you said to her was I
```



```
 1                P. Castaldo
 2   know what happened, she banged on
 3   the table?  (Indicating.)
 4        A.  Yes, sir.
 5        Q.  And she said -- and she
 6   blurted out what happened?
 7        A.  Yes, sir.
 8        Q.  That was an important
 9   moment in the case?
10        A.  Yes, sir.
11        Q.  Why didn't you document it?
12        A.  I didn't put that down,
13   sir.
14        Q.  Why?
15        A.  You're asking me, I'm
16   telling you I didn't do it.
17        Q.  But I know you didn't do
18   it.  I want to know why didn't you
19   do it.  Why wouldn't you write
20   something important down like that?
21        A.  I didn't do it.
22        Q.  Why didn't Quick do it?  He
23   was taking notes, wasn't he?
24        A.  I don't believe Quick was
25   in the room.  I'm not sure if he was
```



```
```

Case 7:23-cv-06960-KMK   Document 120-5   Filed 07/24/24   Page 10 of 14

PATRICK CASTALDO                                   August 01, 2019
ANTHONY DIPIPPO vs COUNTY OF PUTNAM                            483

```
 1                    P. Castaldo
 2   in the room at that time, sir.
 3        Q.   Okay.  Why didn't you write
 4   it afterwards what happened?
 5        A.   I told my boss about it.  I
 6   told Turner about it.
 7        Q.   Oh, you told Turner about
 8   it?
 9        A.   Yes.
10        Q.   Okay.
11        A.   And then he directed us to
12   take a statement.
13        Q.   All right.
14             So Denise Rose says "When I
15   was at the sheriff's department they
16   said to me if you are to withhold
17   information, you can be charged with
18   conspiracy.  And at that point I
19   just could not take it anymore, I
20   had held it in for so long.  So it
21   was perfect timing for me to say
22   this is what happened and then I
23   told them."
24             So what she's saying is
25   either a mistake or a lie?
```



800.211.DEPO (3376)
*EsquireSolutions.com*

```
 1                   P. Castaldo
 2        Q.   Okay.
 3        A.   That's where it stays; it
 4   doesn't stay in the file.
 5        Q.   I gotcha.
 6             You created no
 7   documentation of that video?
 8             You didn't write a
 9   report --
10        A.   No.
11        Q.   -- saying we took a video?
12             Nothing like that?
13        A.   Not that I know of.  If
14   there is something there to refresh
15   me --
16        Q.   There's not.
17        A.   No, then I didn't, sir.
18        Q.   Okay.  And then your
19   opinion of the video, because of
20   what Scott Olivieri told you, was
21   that there was nothing relevant to
22   the case on it, correct?
23        A.   Yes.  And I believe whoever
24   listened to it also told me that
25   there was nothing there, sir.
```



1                    P. Castaldo
2        Q.   Who listened to it?
3        A.   I don't know, sir.
4        Q.   Was it another officer?
5        A.   Yes, sir.
6        Q.   Was it Quick?
7        A.   I don't know.
8        Q.   All right.  So somebody
9    told you they listened to it and
10   there was nothing relevant on it?
11       A.   Yes, sir.
12       Q.   It had to be someone
13   knowledgeable about the case so they
14   would know what's relevant, right?
15            MR. RANDAZZO:  Objection.
16       A.   Yes, sir.
17       Q.   And then you gave it to ID
18   or somebody gave it to ID?
19       A.   I didn't.
20       Q.   And you never thought about
21   it again because you assumed there
22   was nothing relevant on it, that's
23   what you were told?
24       A.   Yes.  The tape was given to
25   ID, the district attorney was



```
 1                  P. Castaldo
 2   notified, my boss was -- well, he
 3   knew about it.
 4        Q.  Oh, the district attorney
 5   was notified.  By who?
 6        A.  I don't know.
 7        Q.  You don't know whether they
 8   were or weren't; do you?
 9        A.  I didn't do it, so I don't
10   know.
11        Q.  You don't know whether they
12   were notified or not; do you?
13        A.  Eventually, yes, they knew
14   about it.
15        Q.  Well, they could have
16   learned about it from Olivieri,
17   correct?
18        A.  No, I don't believe so.  I
19   believe an officer would have told
20   them.
21        Q.  You don't know whether an
22   officer told them?
23             MR. RANDAZZO:  Objection.
24        A.  I don't know who.
25        Q.  You had no intention of
```



800.211.DEPO (3376)
EsquireSolutions.com

```
 1                    P. Castaldo
 2   giving it to them because you didn't
 3   think it was important, right?
 4           MR. RANDAZZO:  Objection.
 5       A.  I never said that.
 6       Q.  Well, I'm asking you.
 7       A.  No, I never said that.
 8       Q.  You determined there was
 9   nothing of use on it, correct?
10       A.  I was told that.
11       Q.  And you accepted that
12   without even looking at it, correct?
13       A.  Yes.  I'm going to believe
14   an officer tells me something, I'm
15   going to believe them.
16       Q.  So you had no reason to
17   give it to the DA, correct?
18           MR. RANDAZZO:  Objection.
19       A.  I don't give it to the DA.
20   That goes through ID; it's a
21   separate department.
22       Q.  Okay.
23           MR. BRUSTIN:  Okay.  This
24       is a good place to stop for
25       today.
```

